[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 19, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-11156
Non-Argument Calendar

_____

D. C. Docket No. 03-00515-CV-F-E

PATRICIA ARNOLD,

Plaintiff-Appellant,

versus

TUSKEGEE UNIVERSITY,

Defendant-Appellee,

JAMES E. WEBSTER, Dr., et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(December 19, 2006)

Before TJOFLAT, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Patricia Arnold appeals the district court's grant of summary judgment to her employer, Tuskegee University, in her employment discrimination action. For the reasons that follow, we affirm the district court.

## I. BACKGROUND[1]

Arnold initially worked for Tuskegee beginning in 1989. In 1990, she submitted a written complaint of sexual harassment against her supervisor to the Director of Personnel. In response, Tuskegee transferred Arnold to another position with a different supervisor. She continued to work for the University until 1997 when she was discharged due to a budgetary-related workforce reduction. In July 1999, Arnold was rehired by Tuskegee with James Webster as her immediate supervisor. Upon being rehired, Arnold received a copy of Tuskegee's handbook on discrimination and sexual harassment, which outlined the school's sexual harassment and anti-retaliation policies and advised employees to file a written grievance with the Director of Personnel if they believed they had been sexually harassed.

In December 1999, Webster began propositioning Arnold sexually, inviting her to his home, and telling her that he was her "boss" and could fire her if she did

---

[1] The facts are recounted in the light most favorable to Arnold pursuant to this court's standard for reviewing a district court's grant of summary judgment. See Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1230 (11th Cir. 2006).

not submit to his sexual demands.  After enduring months of such conduct, Arnold went to Webster's home and had sexual intercourse with him in March 2000 and again in April 2000.  A few weeks after the second encounter, Arnold made a third visit to Webster's home and told him that she would no longer have sex with him.

In March or April of 2000, Arnold spoke with Barbara Williams, the Vice President of Human Resources, about transferring to a higher-paying position.  Arnold did not, however, disclose that Webster was sexually harassing her.  On October 19, 2000, after Webster refused to sign Arnold's time sheet, Arnold complained to Williams that Webster had subjected her to unwanted sexual advances.  Based on this complaint, Arnold was placed on paid administrative leave and instructed to file a written statement detailing the alleged harassment.  Williams conducted an investigatory interview with Webster on October 20, 2000, during which Webster stated that he and Arnold had engaged in consensual sex.  On October 30, 2000, Webster submitted a written statement detailing his interactions with Arnold.  After Williams told Arnold about Webster's statement, in her own written statement, Arnold admitted having sexual relations with Webster, but claimed she did so because she feared losing her job.  In response, Tuskegee assigned Arnold to another supervisor, instructed Webster to have minimal contact with her, and told him not to retaliate against her.  Thereafter,

3

Webster never again made comments of a sexual nature to Arnold.

On December 14, 2000, Arnold filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In March 2002, the EEOC completed its investigation and issued Arnold a cause determination. In September 2002, after several disagreements with her new supervisor about her job responsibilities and time records, Arnold received a poor job evaluation and was recommended for reassignment. On December 16, 2002, the Dean informed Arnold that she was being reassigned to a new supervisor, effective January 2, 2003, and that failure to report to her new assignment would result in disciplinary action. After Arnold failed to report as ordered, on January 6, 2003, the Dean again ordered Arnold to report to her new assignment. On January 13, 2003, Arnold filed suit against, *inter alia*, Webster and Tuskegee, alleging sexual harassment and retaliation under Title VII and various claims under state law.

On March 25, 2003, after Arnold had repeatedly submitted time sheets that failed to conform with Tuskegee's regulations, she was suspended for three days. In a written memorandum, her supervisor explained that the suspension was due to Arnold's: insubordinate actions regarding her time sheets, disregard for instructions, calling her supervisor a "liar," and refusing to apologize for making these comments. The memorandum also advised Arnold that further infractions

4

could result in termination.

Upon returning from suspension on March 31, 2003, Arnold found the locks to her office had been changed. Williams told Arnold that the action was taken for Arnold's protection. Williams then instructed Arnold to attend the EEOC training session scheduled for that day, telling her not to discuss her lawsuit. On April 1, 2003, Arnold met with her supervisor and the Dean about the status of a particular assignment. After Arnold refused to respond to several questions, the meeting was terminated. On April 2, 2003, Arnold was discharged.

After dismissing Arnold's claims against Webster on various grounds, the district court permitted Arnold to proceed on her Title VII and state law claims against Tuskegee. The district court granted summary judgment in favor of Tuskegee on the Title VII claims and dismissed the state law claims without prejudice, declining to exercise supplemental jurisdiction pursuant to its discretion under 28 U.S.C. § 1367(c)(1).

## II. DISCUSSION

We review a district court's grant of summary judgment <u>de novo</u>, viewing the evidence in the light most favorable to the party opposing the motion. <u>Cotton v. Cracker Barrel Old Country Store, Inc.</u>, 434 F.3d 1227, 1230 (11th Cir. 2006). Summary judgment is appropriate if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We review a district court's refusal to exercise supplemental jurisdiction for abuse of discretion. Lucero v. Trosch, 121 F.3d 591, 598 (11th Cir. 1997).

## A. Sexual Harassment

Arnold first argues that the district court erred by dismissing her sexual harassment claim. Title VII makes it unlawful for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of that individual's sex. 42 U.S.C. § 2000e-2(a)(1). To establish sexual harassment under Title VII, an employee must prove that (1) she belongs to a protected group, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on her sex, (4) the harassment altered the terms and conditions of her employment, and (5) there is a basis for holding her employer vicariously liable. Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1245 (11th Cir. 2004).

When the alleged harassment is attributed to a supervisor, the plaintiff may rely on one of two theories to establish the fourth and fifth elements of her sexual harassment claim. Id. at 1246; Cotton, 434 F.3d at 1231 (citing Burlington Indus.,

6

Inc. v. Ellerth, 524 U.S. 742, 753-54, 118 S.Ct. 2257, 2265, 141 L.Ed.2d 633

(1998)).  Under the first or "tangible employment action" theory, the plaintiff must

prove that the harassment culminated in an adverse tangible employment action

against her.  Cotton, 434 F.3d at 1231.  Under this theory, the employer is

automatically held vicariously liable for the harassment.  Frederick v.

Sprint/United Mgmt. Co., 246 F.3d 1305, 1311 (11th Cir. 2001).  Under the second

or "no tangible employment action" theory, the plaintiff must prove that the

harassment was sufficiently severe and pervasive to effectively cause a change in

the terms and conditions of employment.  Faragher v. City of Boca Raton, 524

U.S. 775, 786 118 S.Ct. 2275, 2283 141 L.Ed.2d 662 (1998).  Under this theory,

the employer may avoid vicarious liability by asserting the affirmative defense set

forth by the Supreme Court in Faragher and Ellerth.  Frederick, 246 F.3d at 1311

(citations omitted).  Arnold contends that she is entitled to relief under both

theories.[2]

---

[2] Although Arnold uses the terms "quid pro quo" and "hostile work environment" in her Brief, as we observed in Frederick v. Sprint/United Management Co., 246 F.3d 1305, 1311 (11th Cir. 2001), the Supreme Court has indicated that courts should no longer use these labels to analyze whether an employer should be held liable on an employee's Title VII claim concerning a supervisor's sex-based harassment.  Id. (citations omitted).  Thus, although Arnold has styled her action using the old Title VII terminology, we treat her "quid pro quo" claim as an adverse "tangible employment action" claim, and her "hostile environment" claim as one in which no adverse "tangible employment action" occurred.

We also note that Tuskegee contends that Webster did *not* sexually harass Arnold.  It contends that Arnold voluntarily participated in a sexual relationship with Webster and that Webster's sexual advances were not unwelcome.  We need not reach this issue, however,

## 1. Harassment Resulting in a Tangible Employment Action

"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," and, "in most cases[,] inflicts direct economic harm." Cotton, 434 F.3d at 1231 (quoting Ellerth, 524 U.S. at 761-62, 118 S.Ct. at 2268-69). To recover under the "tangible employment action" theory of sexual harassment, the plaintiff must prove a causal link between the tangible employment action and the incident(s) of sexual harassment. Id. When the alleged harasser is the decisionmaker for the tangible employment action, this gives rise to an inference that the harasser's action was taken *because of* the plaintiff's sex. Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1247 (11th Cir. 1998). When the harasser is *not* the decisionmaker, however, the plaintiff may not benefit from the inference of causation that would arise from their common identity. Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1331 (11th Cir. 1999). In this situation, the plaintiff must establish the requisite causal link by showing that the decisionmaker, without having independently evaluated the plaintiff's situation, acted in accordance with

_____

because, as discussed below, we conclude that a reasonable fact-finder could *not* find a causal connection between the allegedly sexually-harassing conduct and a tangible employment action and that Tuskegee has established the Faragher-Ellerth affirmative defense.

8

the harasser's wishes in taking the tangible employment action against the plaintiff. Llampallas, 163 F.3d at 1249 (11th Cir. 1998). Although temporal proximity between the tangible employment action and the harassment "can give rise to a genuine issue of fact as to causation," Cotton, 434 F.3d at 1232, and may be sufficient to establish a prima facie case, Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000), such an inference may be negated by unrebutted evidence showing that the tangible employment action was based on grounds independent of the alleged harassment. Frederick, 246 F.3d at 1312.

Here, Arnold contends that because she refused to submit to Webster's sexual demands, Webster subjected her to numerous "tangible employment actions," including: yelling at her, telling her to find another job, requesting sexual favors, and denying her requests for course work, supplies, and office furniture. But despite Arnold's subjective opinion, under our case law, no reasonable person would conclude that these actions constituted a significant change in Arnold's employment status. See Ellerth, 524 U.S. at 761. Thus, even assuming that these actions were taken because of Arnold's sex, these actions, independently or collectively, did not constitute a tangible employment action within the meaning of Title VII.

Arnold also contends that she was subjected to additional "tangible

employment actions" wherein, unlike the actions described above, Webster was not the clear decisionmaker. These actions include: denying her promotions, denying her a promised $11,000 pay increase,[3] reassigning her to an undesirable job, giving her adverse and insufficient job assignments, giving her negative performance evaluations, changing the locks to her office door, tampering with her computer, suspending her, and firing her. Because these actions were taken by someone other than Webster, Arnold had the burden of proving that these actions were taken *because of* her sex. Llampallas, 163 F.3d at 1248. But the record contains no evidence from which a reasonable fact-finder could conclude that the requisite causation exists (even assuming, without deciding, that these acts, individually or collectively, constituted a "tangible employment action"). Thus, we affirm the district court in this regard.

## 2. Harassment with No Adverse Employment Action

To prevail on a claim of sexual harassment when *no* "tangible employment action" has been taken, the plaintiff must present sufficient evidence to show that the harassment she suffered was sufficiently severe or pervasive to alter the terms

---

[3] As the district court noted, there is nothing in the record from which a reasonable fact-finder could conclude that Webster played any role in denying Arnold a salary increase. Arnold presented no evidence that Webster made any statements regarding his ability to influence how much she was paid or connecting a salary increase to her willingness to submit to his sexual demands. Indeed, it is undisputed that Webster had no control over Arnold's salary and that the Office of Human Resources Management was responsible for establishing the salary for staff positions such as Arnold's.

and conditions of employment and create a discriminatorily abusive working environment. Gupta, 212 F.3d at 582-83. If the plaintiff satisfies her burden, the defendant-employer may avoid vicarious liability for the supervisor's conduct by raising and proving the affirmative defense described in Faragher and Ellerth. Frederick, 246 F.3d at 1311 (citations omitted). To establish this defense, the employer must prove by a preponderance of the evidence that (a) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior *and* (b) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Id.

Here, the district court held that Tuskegee took reasonable care to prevent and correct the harassment and that Arnold unreasonably failed to take advantage of Tuskegee's remedial mechanisms. We examine each of these issues in turn.

### a. Reasonable Care to Prevent and Correct the Harassment

An employer may demonstrate reasonable care to prevent sexual harassment by showing the development of "an effective and comprehensive anti-sexual harassment policy," which is "thoroughly disseminated," and to which the employer "demonstrate[s] a commitment to adhering." Farley v. American Cast Iron Pipe Co., 115 F.3d 1548, 1554 (11th Cir. 1997). An employer may demonstrate reasonable care to correct harassment by taking substantive measures

11

to stop the harassment and ensure that there is no reoccurrence.  See Walton v. Johnson & Johnson Serv., Inc., 347 F.3d 1272, 1288 (11th Cir. 2003).  Although an employer need not act instantaneously, it must act in a reasonably prompt manner to respond to the employee's complaint.  Frederick, 246 F.3d at 1314.

Here, it is undisputed that Tuskegee had a comprehensive policy against sexual harassment.  Arnold admitted receiving a copy of this policy when she was hired in 1999, and she presented no evidence that the policy was not similarly disseminated to other employees.  During Arnold's previous term of employment with Tuskegee, she successfully utilized the reporting mechanisms outlined in the policy to lodge a sexual harassment complaint against her supervisor.

Arnold argues, however, that when she initially complained about Webster, Tuskegee failed to take appropriate action to correct the harassment.  But the record shows that in her initial complaints, Arnold failed to explicitly assert that she was being sexually harassed.  Once Arnold explicitly told Williams that Webster was sexually harassing her, Tuskegee investigated the complaint, assigned her to another supervisor, instructed Webster to have minimal contact with her, and ordered him not to retaliate against her.

Thus, we agree with the district court's conclusion that Tuskegee has satisfied the first element of the Faragher-Ellerth affirmative defense.

12

### b. *Unreasonable Failure to Avoid the Harm*

An employer's showing that the plaintiff-employee unreasonably failed to follow the employer's complaint procedures will often be sufficient to prove that the employee failed to fulfill her obligation of reasonable care to avoid the harm, thereby establishing the second element of the Faragher-Ellerth defense. Faragher, 524 U.S. at 807-08, 118 S.Ct. at 2293. In some cases, an employee's non-compliance may be reasonable under the circumstances. Frederick, 246 F.3d at 1314. But subjective fears of reprisal, standing alone, do not excuse an employee's failure to report a supervisor's harassment in accordance with the employer's policy. Walton, 347 F.3d at 1290.

Here, despite her personal knowledge and prior successful utilization of Tuskegee's anti-harassment policy, Arnold did not report Webster's conduct until after she had twice engaged in sexual intercourse with him. Arnold presented no evidence to show that her failure to promptly report the alleged harassment pursuant to Tuskegee's policy was reasonable under the circumstances. Thus, we conclude that Tuskegee established the second element of its affirmative defense.

Accordingly, we affirm the district court's conclusion that, as a matter of law, the Faragher-Ellerth affirmative defense entitled Tuskegee to avoid vicarious liability for Webster's alleged sexual harassment of Arnold.

## B. Retaliation

Arnold also argues that the district court erred in dismissing her retaliation claim. Title VII prohibits an employer from retaliating against an employee because "[s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, the plaintiff must show that (1) she engaged in statutorily protected activity, (2) she suffered an adverse action,[4] and (3) there is a causal connection between the protected activity and the adverse action. Hulbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006). If the plaintiff establishes her prima facie case, the burden shifts to the defendant to articulate a legitimate reason for the adverse action. Id. If the defendant does so, to avoid summary judgment, the plaintiff must produce sufficient evidence for a reasonable fact-finder to conclude that each of the employer's proffered reasons is pretextual. Chapman v. AI Transp., 229 F.3d 1012, 1037 (11th Cir. 2000).

---

[4] The Supreme Court recently addressed the adverse action element of a Title VII retaliation claim in Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. —, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). The Court rejected the standards applied in this court and other circuits by holding that "the scope of [Title VII's] anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm" and therefore, "is not limited to discriminatory actions that affect the terms and conditions of employment." Id. at 2412-14. Accordingly, the plaintiff need not show that she suffered an action affecting the terms and conditions of her employment (which was this court's standard before Burlington Northern), but must show that she was subjected to action(s) that a "reasonable employee would have found materially adverse" such that a reasonable employee would have been dissuaded from "making or supporting a charge of discrimination." Id.

14

In her Appellate Brief, Arnold contends that after she filed this lawsuit in January 2003, Tuskegee retaliated against her by suspending her for three days, refusing to provide her with training and supplies to create a database following her suspension, telling her not to speak in an EEOC training session, and terminating her employment.[5] The first element of the prima facie case is not in dispute—Arnold's filing the instant lawsuit constituted a protected activity under the first prong of her prima facie case. But even if we were to conclude that some or all of the acts alleged by Arnold constituted adverse actions and that there was a causal connection between her protected activity and the adverse actions, we agree with the district court's conclusion that a reasonable trier of fact could not find that Tuskegee's non-discriminatory reasons for these actions were pretextual.

According to Tuskegee, the actions against Arnold were taken because she: had a long history of failing to follow University policy, accused her supervisor of lying about her misconduct, repeatedly submitted inaccurate time sheets, refused to

---

[5] In both her Complaint and her Amended Complaint, Arnold alleged several additional retaliatory acts in support of her retaliation claim. The district court held that these acts did not constitute "adverse actions" within the meaning of Title VII. Arnold v. Tuskegee Univ., No. 3:03CV-515-F., 2006 WL 47507, at *13 n.11 (M.D. Ala. Jan. 9, 2006). In her Appellate Brief, however, Arnold does not discuss these acts in her arguments regarding the retaliation claim, and she does not argue that the district court erred in finding that these acts did not constitute adverse actions. Thus, on appeal, Arnold has waived arguments that these acts were adverse actions for purposes of her retaliation claim, and we do not consider them. Tanner Adver. Group, LLC v. Fayette County, Ga., 451 F.3d 777, 786-87 (11th Cir. 2006); Flanigan's Enters., Inc. of Ga. v. Fulton County, Ga., 242 F.3d 976, 987 n.16 (11th Cir. 2001).

respond to her supervisor's questions regarding the status of her work, and continued to engage in insubordinate conduct after being advised that failure to modify her conduct could result in her termination. Arnold presented no evidence to demonstrate that Tuskegee's proffered reasons were pretextual. Accordingly, we affirm the district court in this regard.

## C. Supplemental Jurisdiction over the State Law Claims

Although the district court declined to exercise supplemental jurisdiction over Arnold's state law claims, Arnold nonetheless argues the merits of these claims without explicitly challenging the district court's refusal to exercise supplemental jurisdiction these claims. Pursuant to the supplemental jurisdiction statute, a district court may decline to exercise supplemental jurisdiction over a state law claim if, *inter alia*, the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(1). When the district court has dismissed all federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 619 n.7, 98 L.Ed.2d 720 (1988).

Accordingly, because the district court granted summary judgment in favor of Tuskegee on Arnold's federal claims, it did not abuse its discretion in declining

to exercise supplemental jurisdiction over her state law claims.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court.