[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 4, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-15404

_____

D. C. Docket No. 03-02940-CV-J-S

KOURTNEY COTTON,

Plaintiff-Appellant,

versus

CRACKER BARREL OLD COUNTRY STORE, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(January 4, 2006)**

Before CARNES, HULL and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

Kourtney Cotton appeals the summary judgment entered in favor of Cracker

Barrel Old Country Store, Inc., and against her complaint of sexual harassment and

retaliation.  Cotton raises two arguments on appeal:  (1) the district court erroneously concluded that Cotton's claim of sexual harassment failed because Cracker Barrel did not take a "tangible employment action" against her and (2) the district court erroneously concluded that Cotton's claim of retaliation failed because Cracker Barrel did not take an "adverse employment action" against her. Because Cotton did not present sufficient evidence to prove a causal relationship between the actions of Cracker Barrel and either the incident of sexual harassment or the filing of her complaint, we affirm.

## I.  BACKGROUND

On October 17, 2002, Carl Walker, the general manager of a Cracker Barrel store located in Gardendale, Alabama, hired Cotton to work as a part-time cashier and retail associate.  Walker advised Cotton that she was being hired primarily for seasonal work and should expect her hours to decrease after the Christmas holidays.  On November 4, 2002, Walker, while alone with Cotton in the stockroom of the store, "pulled [Cotton] towards him and kissed [her] on the mouth and continued to open his mouth and stick his tongue down [Cotton's] throat."  Cotton said "no" and pushed Walker away.  Cotton reported the incident to Kay Popee, the retail manager of the Gardendale store, and contacted the Cracker Barrel employee hotline.  When filing her complaint with the hotline,

2

Cotton stated that Walker had also asked her to go to a movie with him the day before the incident in the stockroom. Cotton's complaint of sexual harassment led to an investigation of Walker's conduct. As a result of this investigation, Walker was disciplined with a written reprimand and a warning, and Popee arranged the work schedule to avoid contact between Walker and Cotton.

Cotton's mother, Pam Cotton, testified to other incidents involving Walker, all of which occurred before the incident in the stockroom, but none of which was reported to Cotton's supervisors or the Cracker Barrel hotline. Pam Cotton testified that, before Cotton was asked to interview for a position at Cracker Barrel, Walker had given Kourtney and her mother free food at the restaurant, put his hand on Pam Cotton's leg, and invited Pam Cotton to spend a weekend with him in Gulf Shores. Pam Cotton stated that, when Walker asked Cotton to interview for a position at Cracker Barrel, he said to Kourtney "make sure you wear something sexy to the interview." Cotton's mother stated that just before the interview Walker "jokingly said . . . [Kourtney Cotton] can get all the hours she wants if [Pam Cotton] [went] out with [Walker], and stuff like that." Pam Cotton also testified that, before the incident in the stockroom, Walker invited her to a Cracker Barrel storage building and promised to give her "anything [she] wanted out of there."

3

Cotton continued to work in the Cracker Barrel store between 20 and 40 hours a week, but she testified that "[she] wasn't treated the same by anybody." First, Cotton stated that Walker orally reprimanded her for using a work phone for personal reasons, but Cotton admitted that this reprimand was consistent with Cracker Barrel policy. Second, Cotton testified that Popee refused to allow her to sit on a stool while working, but Popee testified that she did not allow any employee to use a stool while working. Third, Cotton argued that Popee failed to complete the scheduled performance evaluation that was due 30 days after Cotton's hiring date, but Popee testified that the date for Cotton's evaluation fell during the holiday season and she was "really, really [busy] through Christmas." When an investigator from Cracker Barrel held a meeting with Cotton to follow-up on her complaint, Cotton mentioned only the first of these incidents and admitted that "everybody had been fine and that [she] hadn't had any more events." Cotton also admitted that "[Walker] never came around [her] much . . . [and] [Popee] had made the schedule a little bit better so [she] wouldn't be there as much with him."

Following the incident in the stockroom, Cotton's work hours initially increased. Cotton was scheduled to work 34.5 hours during the November 22, 2002, pay period; 31 hours during the November 29, 2002, pay period; 31 hours during the December 6, 2002, pay period; 39 hours during the December 13, 2002

4

pay period; and 37 hours during the December 20, 2002, pay period.  On December 9, 2002, while Cotton's hours were increasing, Cracker Barrel hired an additional full-time cashier.

Beginning with the pay period that ended on December 27, 2002, Cotton's hours decreased.  She was scheduled to work 23 hours during the December 27, 2002, pay period; 14 hours during the January 3, 2003, pay period; 14.25 hours during the January 10, 2003, pay period; 7 hours during the January 17, 2003, pay period; and 13 hours during the January 24, 2003, pay period.  Cracker Barrel's only other part-time employee experienced a similar reduction in scheduled hours: from 37.25 hours during each of the December 13 and December 20, 2002, pay periods to 0 hours during the December 27, 2002, pay period; 14 hours during the January 3, 2003, pay period; 0 hours during the January 10, 2003, pay period; 8 hours in the January 17, 2003, pay period; and 14.25 hours in the January 24, 2003, pay period.

Cotton admits responsibility for some of the reduction in her hours of work.  Cotton requested time off on December 24 and 31, 2002, and January 11, 2003, and she was absent, for medical reasons, from her scheduled shift on December 26, 2002, and another shift during the week of January 10, 2003.  Cotton requested to

work additional shifts, but Popee told her none were available. On January 22, 2003, Cotton informed Popee that she had found another job.

In October 2003, Cotton filed a complaint of discrimination under Title VII of the Civil Rights Act of 1964. See 42 U.S.C. §§ 2000e-2000e-17. Cotton's amended complaint alleged sexual harassment and retaliation as well as state law claims of assault, battery, and negligent and wanton hiring, supervision, and retention. Cracker Barrel moved for summary judgment. Cracker Barrel argued that her claim of sexual harassment failed because Cotton's evidence had not established that Cotton's reduction in hours was caused by the incident of harassment. Cracker Barrel argued that Cotton's retaliation claim also failed because her evidence had not established an "adverse employment action" caused by her complaint of harassment. The district court granted the motion for summary judgment as to Cotton's claims under Title VII and declined to exercise supplemental jurisdiction over her state law claims.

## II. STANDARD OF REVIEW

This Court reviews de novo the grant of a motion for summary judgment. Rojas v. Florida, 285 F.3d 1339, 1341 (11th Cir. 2002). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

6

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To survive a motion for summary judgment, the nonmoving party must demonstrate that there is a "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).

### III. DISCUSSION

Cotton raises two issues on appeal. First, Cotton argues that the district court erred in concluding that the harassment did not result in a tangible employment action. Second, Cotton argues that the district court erred in concluding that there was no evidence that her complaint of harassment caused Cracker Barrel to take an adverse employment action against her. We address each argument in turn.

### A. Whether the Incident of Harassment Resulted in a Tangible Employment Action?

Title VII of the Civil Rights Act makes it an "unlawful employment practice" for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). To establish sexual harassment under Title VII, an employee must prove "(1) that she

belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists." Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1244 (11th Cir. 2004). In its motion for summary judgment, Cracker Barrel conceded the first three parts of this test and argued that Cotton failed to satisfy her burden of proving the last two requirements.

To prove sexual harassment in violation of Title VII, a plaintiff may rely on one of two theories. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753-54, 118 S. Ct. 2257, 2265 (1998). Under the first theory, the plaintiff must prove that the harassment culminated in a "tangible employment action" against her. Id. Under the second or "hostile work environment" theory, the plaintiff must prove that she suffered "severe or pervasive conduct." Id. at 754, 118 S. Ct. at 2265. Because Cotton concedes that Walker's harassment did not rise to the level of "severe or pervasive conduct," we must determine whether Cotton presented evidence that Cracker Barrel took a "tangible employment action" against her. See id. at 753-54, 118 S. Ct. at 2265.

"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id. at 761, 118 S. Ct. at 2268. A tangible employment action "in most cases inflicts direct economic harm." Id. at 762, 118 S. Ct. at 2269. An employment decision that "alters the employee's compensation" qualifies as a tangible employment action. Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000). A reduction in an employee's hours, which reduces the employee's take-home pay, qualifies as a tangible employment action. See Burlington Indus., 524 U.S. at 761, 118 S. Ct. at 2268-69; Gupta, 212 F.3d at 587.

There also must be a causal link between the tangible employment action and the sexual harassment. See Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1312 (11th Cir. 2001); see also Burlington Indus., 524 U.S. at 753-54, 118 S. Ct. at 2265. Cotton had to prove more than the mere reduction of her hours; Cotton had to prove that the reduction was causally related to the incident of harassment.

Cotton failed to establish a causal connection between the reduction in her hours and the incident of harassment. See Clark County School Dist. v. Breeden, 532 U.S. 268, 272, 121 S. Ct. 1508, 1510-11 (2001). It is uncontested that Walker

9

informed Cotton, when she was hired and weeks before the incident of harassment, that her hours of work would be reduced after the Christmas holidays. When an employer contemplates a given action before the harassment takes place, temporal proximity between the action and the incident of harassment alone will not suffice to show causation. See id. Further, Cotton admits that Popee, not Walker, was responsible for creating the schedule. The time sheets for the store evidence that the other part-time employee experienced a similar reduction in hours. Cotton also bore partial responsibility for the decline in her hours because, in the weeks following Christmas, she took vacation time on three occasions and sick leave for two shifts. Cotton's hours initially increased following the incident of harassment.

Although temporal proximity between the harassment and a tangible employment action can give rise to a genuine issue of fact as to causation, this conclusion is not warranted in Cotton's case. Compare Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999), with Clark County, 532 U.S. at 272, 121 S. Ct. at 1510-11, and Mack v. Ala. Dep't of Human Res., 201 F. Supp. 2d 1196, 1206 (M.D. Ala. 2002). In Farley, when this Court reversed a summary judgment entered against an employee who had complained of retaliation under the Americans with Disabilities Act, we concluded that the employee's termination seven weeks after his complaint of discrimination was sufficient to prove temporal

10

proximity to support a prima facie case of retaliation. Id. at 1336-37. Farley had been told before his complaint that his performance was "above-average," so he had no reason to expect his later termination. Id. at 1327.

Cotton's evidence fails to satisfy her burden to show causation. Cotton admitted she had been hired with the expectation that her hours of work would decrease at the end of the Christmas season, and the timing of the reduction was in line with her expectation. See Clark County, 532 U.S. at 272, 121 S. Ct. at 1510-11; see also Mack, 201 F. Supp. 2d at 1206 (distinguishing Farley because "Defendants had already made abundantly clear their intention to . . . recommend [the plaintiff's] termination"). Here, unlike in Farley, an inference of causation is negated by Cotton's own testimony of her expected reduction in working hours, even though the reduction in hours was temporally proximate.

The incidents alleged by Cotton's mother likewise fail to evidence a causal connection between the incident of harassment and the decrease in Cotton's hours. Walker's actions are not sexual harassment of Cotton because they were not directed to her but rather to her mother. See Hulsey, 367 F.3d at 1245 ("[Quid pro quo sexual harassment occurs] if the employee's refusal to submit to a supervisor's sexual demands results in a tangible employment action." (emphasis added)); see also Cairo v. OH Material Corp., 710 F. Supp. 1069, 1072 (M.D. La. 1989).

11

Although Walker's actions may evidence his propensity or ability to change an employee's working hours in exchange for someone's dating him, they fail to provide proof of a causal link between Cotton's reduced hours and the incident of harassment.

Cotton argues that Walker hired a full-time cashier on December 9, 2002, to cause a greater reduction in Cotton's hours in the post-holiday season, but this argument fails for at least three reasons. First, the record shows that Cotton's work hours actually increased during the weeks after the full-time cashier was hired. Second, as mentioned before, the parties contemplated the reduction in Cotton's hours before the incident of harassment occurred, and the other part-time employee at the store experienced a comparable reduction in her work hours after the Christmas holidays. Third, Cotton offered no evidence that the decision to hire a full-time cashier was related to the incident of harassment. The district court did not err in granting summary judgment against Cotton's claim of sexual harassment.

### B. Whether Cotton's Complaint of Harassment Caused an Adverse Employment Action?

Title VII also prohibits an employer from retaliating against an employee for enforcing her rights under the Act: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or

because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To state a claim for retaliation under Title VII, the "plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir. 1998). The district court found that Cotton had engaged in statutorily protected expression by filing an internal complaint of sexual harassment, and Cracker Barrel does not challenge this finding on appeal. We must determine whether there is evidence that Cotton suffered an adverse employment action related to her protected expression. See id.

An adverse employment action is conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000). Although "Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions," the plaintiff must still demonstrate "some threshold level of substantiality." Wideman, 141 F.3d at 1456. We look to the "totality of the alleged reprisals" to determine

13

whether this burden has been met. Id. To satisfy the causation requirement, Cotton had to prove "that the protected activity and the adverse action are not completely unrelated." Id. at 1457 (internal citations and quotations omitted).

Cotton failed to satisfy her burden. As with her claim of sexual harassment, Cotton's claim of retaliation is unsupported by evidence of causation. Cotton argues that her work hours were reduced in retaliation for her claim of harassment, but Walker informed Cotton, when she was hired, that her hours would decrease after the Christmas holidays. See Clark County, 532 U.S. at 272, 121 S. Ct. at 1510-11 ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."). Moreover, Popee, not Walker, was responsible for scheduling the employees' hours of work. Cotton's hours increased in the weeks after she complained of discrimination, and her hours decreased after the holidays in keeping with Cotton's previous expectations and in parity with the hours of the other part-time employee. Cotton failed to offer any evidence that the decision to hire a full-time employee was at all related to Cotton's complaint.

Besides her expected reduction in hours, Cotton fails to describe any substantial reprisal for her complaint. Although we look to the "totality of the

14

alleged reprisals," id. at 1456, we consider only those that are truly "adverse." See

Gupta, 212 F.3d at 588-89. "Whether an action is sufficient to constitute an

adverse employment action for purposes of a retaliation claim must be determined

on a case-by-case basis using both a subjective and an objective standard." Id. at

587 (citations omitted). "[T]he employee's subjective view of the significance and

adversity of the employer's action is not controlling; the employment action must

be materially adverse as viewed by a reasonable person in the circumstances."

Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001). "Title VII[] is

neither a 'general civility code' nor a statute making actionable the 'ordinary

tribulations of the working place.'" Gupta, 212 F.3d at 587 (quoting Anderson v.

Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999)).

None of Cotton's other allegations of retaliation can be described as

"adverse." Two alleged reprisals—that Walker reprimanded Cotton for using the

company phone for personal matters and that Popee refused to allow Cotton to sit

on a stool while working as a cashier—were examples of Cracker Barrel's

enforcement of its internal policies, and Cotton does not present any evidence that

Cracker Barrel discriminatorily enforced its policies against her as a result of her

complaint. When an employer applies its standard policies in a nondiscriminatory

manner, its action is not objectively adverse. See Gupta, 212 F.3d at 588. Cotton's

15

bald assertion that "[she] wasn't treated the same by anybody" is insufficient to establish an adverse employment action.  See id.

Cotton's allegation that Popee failed to conduct her 30-day evaluation also fails to rise to the level of an adverse employment action.  When the evaluation was due, Cotton neither complained to Popee that she had not yet received the evaluation nor reported the problem to the Cracker Barrel corporate management. Cotton offers no evidence that she subjectively viewed Popee's failure to conduct the evaluation as an adverse action.  The district court correctly entered summary judgment against Cotton's complaint of retaliation.

## IV.  CONCLUSION

We affirm the summary judgment entered in favor of Cracker Barrel.

**AFFIRMED**.