[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12821
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cv-00535-AKK


CORNELIUS MAHONE,

Plaintiff-Appellant,

versus

CSX TRANSPORTATION, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 13, 2016)


Before JORDAN, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Cornelius Mahone, an African-American train conductor, appeals the district court's grant of CSX Transportation, Inc.'s ("CSXT") motion for summary judgment as to Mahone's allegations of racial harassment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), and 42 U.S.C. § 1981. On appeal, he contends that the district court erred in granting summary judgment because his coworkers' use of the term "homeboy" was sufficient to create a hostile work environment. Upon review of the record and consideration of the parties' briefs, we affirm.

## I.

On or about September 26, 2011, CSXT employee Christopher Ellis called the company's ethics hotline to register a complaint against Mahone.[1] Ellis complained that Mahone threatened him and his family after he called Mahone "sleepyhead" over CSXT's internal radio. Decl. of Linda Mundy ¶ 16, Doc. 31-17 at 6.[2] Ellis stated that Mahone responded on a mobile phone, warning Ellis that "you don't know who you're f[*]cking with" and "you don't know what can happen." *Id.* ¶ 17 (alteration in original). A coworker who overheard the interaction said that Mahone told Ellis that Mahone was "going to do something to

---

[1] In reviewing the district court's grant of summary judgment, we recount the facts in the light most favorable to Mahone. *See infra* section II.

[2] "Doc." refers to the docket entry in the district court record in this case.

[Ellis] in Mobile," that he knew where Ellis lived, and that for $500 he could get one of his buddies to "take care" of Ellis. *Id.* ¶ 18 (alteration in original).

Ellis also complained to Melvin Murray, Mahone's supervisor. Murray then notified his supervisor, who instructed him to assess a disciplinary infraction against Mahone for threatening workplace violence and against Ellis for using the company's internal radio improperly. CSXT removed Mahone from service pending an investigative hearing. Mark Mayo, the manager responsible for disciplinary issues in Mahone's division, cancelled the hearing in an effort to resolve the complaint informally without risking Mahone's employment. Instead, Mayo scheduled a staff meeting for November 2011 with Mahone, Ellis, Murray, two union representatives, and two witnesses to the interaction. Mahone recorded this meeting without the knowledge of anyone else present.

During the staff meeting, Mayo and the union representatives highlighted the importance of communication and observing regulations. A witness to the incident stated that Mahone told Ellis to "watch [his] back . . . [because Mahone was going to] pay [his] homeboy $500 to ride by over at [Ellis's] house." Meeting Audio at 1:25:25, Doc. 35-1. At that point, Mahone and his coworkers began shouting at each other while Mayo, Murray, and the union representatives attempted to calm them down. A union representative asked Mahone to assure Ellis that he would not come by Ellis's house. After another heated discussion, Mahone claimed that

3

his coworkers were racially harassing him by making false statements.  Mahone characterized these false accusations as a hate crime.  The union representative replied that "this [was] not about a black and white issue."  *Id.* at 1:33:20.  Mayo told Ellis that he should not have called Mahone a sleepyhead and that Mahone should not have picked up the phone to respond to Ellis.  Mayo declined to discipline Mahone for the alleged threat, but he explained to all of the parties that if they could not work together they should find employment elsewhere.  Mahone did not make any further allegations of racial harassment after the meeting.

In April 2013, Mahone filed a claim for racial discrimination, retaliation, and harassment against CSXT with the Equal Employment Opportunity Commission ("EEOC").[3]  The EEOC was unable to conclude that CSXT violated Title VII and issued Mahone a notice of his right to sue in federal or state court.

In February 2014, Mahone sued CSXT in state court bringing causes of action under Title VII and § 1981 alleging racial discrimination, retaliation, and racial harassment.  CSXT removed the action to federal court based on federal question jurisdiction.  CSXT filed a motion for summary judgment, which the

---

[3] CSXT ultimately discharged Mahone in 2013 after he violated company policy with three serious operating-rule violations in two years.  Mahone concedes that the incident at issue in this case did not result in his termination.

4

district court granted, dismissing all of Mahone's claims.  Mahone now appeals the dismissal of his racial harassment claim.[4]

## II.

We review a grant of summary judgment *de novo*.  *Holly v. Clairson Indus., L.C.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007).  Summary judgment is appropriate if, drawing all reasonable inferences in favor of the nonmoving party, the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

## III.

Mahone argues that CSXT exposed him to a racially hostile working environment in violation of Title VII and § 1981.  Specifically, Mahone contends that his white coworkers' use of the word "homeboy" created a hostile work environment by characterizing Mahone as a "black thug or black gangster."  Appellant's Br. at 6.

To establish a hostile work environment claim under Title VII or § 1981, a plaintiff must show:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based

---

[4] Mahone does not appeal the dismissal of his racial discrimination and retaliation claims. We thus need not consider these claims. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed.").

on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). To sustain a hostile work environment claim, the plaintiff must prove that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted).[5]

The district court properly granted summary judgment because, even viewing the evidence in the light most favorable to Mahone, he failed to come forward with evidence that the harassment was severe or pervasive enough to amount to a racially hostile work environment. This fourth element of the hostile work environment test "includes a subjective and objective component." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc). In the objective inquiry, we consider "the totality of the circumstances" including the following factors: the frequency of the conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and

---

[5] Although *Harris* is a Title VII case, Title VII and § 1981 hostile work environment claims have the same elements and are subject to the same analytical framework. *See Shields v. Fort James Corp.,* 305 F.3d 1280, 1282 (11th Cir. 2002).

6

whether the conduct unreasonably interferes with the employee's job performance. *Id.* We must keep in mind that neither Title VII nor § 1981 is a "general civility code" that makes actionable ordinary workplace "tribulations." *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006) (internal quotation marks omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation and internal quotation marks omitted).

Although Mahone may have subjectively perceived that the harassment was severe enough to change the terms or conditions of his employment, we cannot say that under the totality of the circumstances this perception was objectively reasonable. The evidence here reflects only a single incident in which a coworker used a racially-charged word during a staff-meeting, but this conduct was not physically threatening or humiliating, and the plaintiff suffered no adverse employment actions.[6] *See Mendoza*, 195 F.3d at 1246. Additionally, this solitary event[7] during Mahone's multiyear employment at CSXT is too "isolated to establish that [Mahone's] employers' conduct was so objectively severe or

---

[6] We assume for purposes of this appeal that the term "homeboy" was a racially-charged reference.

[7] There is some evidence in the record suggesting that Mahone encountered other instances of racial harassment at least two years before this incident, such as when he saw a racial slur painted on a bathroom and a train engine. But Mahone raises no argument on appeal that these earlier incidents should be considered as part of the severe and pervasive harassment.

7

pervasive as to alter the terms and conditions of [his] employment." *McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008) (concluding that over more than two years of employment the use of one racially derogatory term in front of the plaintiff and two racial epithets outside of the plaintiff's presence was insufficient to support a hostile work environment claim). Although an isolated incident—if grave enough—may render a work environment hostile, that is not the case here. *See Faragher*, 524 U.S. at 788.

Accordingly, the district court did not err in determining that Mahone failed to show that he was subjected to a hostile work environment.

IV.

For the foregoing reasons, we affirm the district court's grant of summary judgment.

**AFFIRMED.**