[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11331
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-04612-WMR

JEAN EDDY DEBE,

Plaintiff-Appellant,

versus

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 8, 2021)

Before NEWSOM, GRANT and MARCUS, Circuit Judges.

PER CURIAM:

Jean Eddy Debe, proceeding pro se, appeals the district court's grant of

summary judgment in favor of State Farm on his retaliatory harassment claim.  On

appeal, Debe argues that the district court erred in granting summary judgment to

State Farm on Debe's retaliatory harassment claim because there were genuine disputes of material fact concerning: (1) whether Debe faced materially adverse employment actions and whether there was a causal connection between his protected activities and the alleged materially adverse employment actions; and (2) whether the legitimate, non-discriminatory reasons State Farm offered for the challenged employment actions were pretextual. After thorough review, we affirm.

We review the grant of summary judgment de novo, applying the same legal standards as the district court. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1263 (11th Cir. 2010). We will affirm if the evidence, viewed in the light most favorable to the nonmovant, shows that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Id. at 1263–64. We may affirm summary judgment on any ground supported by the record, even if the district court relied on an incorrect ground or gave an incorrect reason. Id. at 1264.

Under the anti-retaliation provision in Title VII of the Civil Rights Act, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice" or "has made a charge" about an unlawful employment practice under Title VII. 42 U.S.C. § 2000e-3(a). When a plaintiff relies on circumstantial rather than direct evidence for a retaliation claim, we generally use the burden-shifting framework laid out in McDonnell Douglas. Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006).

2

Under this framework, if the plaintiff presents a prima facie case, and the employer presents a legitimate, nonretaliatory reason for its decision, the plaintiff must then show that the employer's proffered reason was pretextual. Id. To establish a prima facie case of retaliation, the plaintiff may show that (1) he engaged in a statutorily protected expression, (2) he suffered a materially adverse action, and (3) there was a causal link between the adverse action and his protected expression. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1260-61 (11th Cir. 2001). A materially adverse employment action is an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quotation omitted). Although Title VII protects against forms of retaliation that produce an objective injury or harm, like a reduction in pay, benefits, or responsibilities that would demonstrate an adverse effect, it does not protect against "normal[] petty slights, minor annoyances, and simple lack of good manners." Id. at 67–68.

To prove a causal connection for a retaliation claim, a plaintiff need only demonstrate "that the protected activity and the adverse action were not wholly unrelated." Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1180 n.30 (11th Cir. 2003) (quotation and emphasis omitted). This element is to be construed broadly. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001). The plaintiff must generally establish that the employer was actually aware of the

3

protected expression at the time it took the adverse employment action.  Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir. 1997).  One way the plaintiff can establish that the adverse action and protected activity were not "wholly unrelated" is by showing a close temporal proximity between the employer's discovery of the protected activity and the adverse action.  Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004).  The temporal proximity must be "very close." Id. (quotation omitted).  A three-to-four-month delay is too long, Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007), while a one-month gap may satisfy the test, Donnellon v. Fruehauf Corp., 794 F.2d 598, 600-01 (11th Cir. 1986).

Yet, if the alleged retaliatory conduct occurred before the employee engaged in protected activity, the two events cannot be causally connected.  Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1233 (11th Cir. 2006) (holding that no causal link existed between the alleged retaliatory conduct and the plaintiff's complaint of harassment where the decision to decrease her post-holiday work hours had been made and conveyed to her when she was hired); Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) (holding that there was no causal link because the employer contemplated demoting the plaintiff months before he complained that the employer was interfering with his rights under the Family and Medical Leave Act).

We've cautioned, however, that establishing the elements of the McDonnell Douglas framework is not the only way to survive summary judgment in an

4

employment discrimination case.  A plaintiff may present "a convincing mosaic" of circumstantial evidence that raises a reasonable inference that the employer intentionally discriminated against her.  Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011) (quotation omitted).

Title VII also prohibits the creation of a hostile work environment or harassment in retaliation for an employee's protected activity.  Monaghan v. Worldpay U.S. Inc., 955 F.3d 855, 861 (11th Cir. 2020).  We analyze retaliatory hostile work environment or retaliatory harassment claims like retaliation claims, and ask whether the conduct complained of "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. at 862–63 (holding that Gowski v. Peake, 682 F.3d 1299 (11th Cir. 2012), was not binding to the extent it stated a different standard) (quotation omitted).  In Monaghan, a retaliatory harassment case, we held that threats of termination and physical violence would have dissuaded a reasonable worker from bringing complaint.  Id.

First, we are unpersuaded by Debe's claim that the district court erred in granting summary judgment to State Farm after concluding that no genuine issue of material fact existed as to Debe's prima facie showing of retaliatory harassment.[1] For starters, the district court did not err in determining, on the summary judgment

---

[1] We note that because the district court articulated the correct standard from Monaghan for materially adverse employment actions in retaliatory harassment claims -- even though its orders predated Monaghan -- we need not remand for the district court to apply the correct standard.

5

record, that Debe had not faced any materially adverse employment actions.  As the record reveals, the district court expressly considered each alleged employment action -- i.e., "unjustified coaching, increased scrutiny, unfounded discipline, file padding of a previously unblemished file and Coaching Tracker [a platform to store notes about employee performance], an unwanted schedule change, and a drop memorandum [a list of alleged performance deficits]" -- and concluded that they did not result in objective harm, whether viewed individually or together, because there was no evidence of a reduction in pay, benefits, or responsibilities that would demonstrate an adverse effect.  The district court did not err in this conclusion.

As for the August 2017 drop memorandum, Debe testified that he did not know whether any hiring manager viewed it, let alone whether his supervisor, Kim Miller, directly contacted any hiring managers about it.  Indeed, Miller testified that the drop memorandum never even became part of an employee's personnel file. Thus, there was no evidence that the drop memorandum had any actual impact on Debe's terms and conditions of employment or his opportunities for promotion.  As for the testimony from Debe's peer, Terry Washington, that Debe's "brand" at State Farm had worsened from knowledgeable and dependable to absent and not receptive to feedback, there similarly was no evidence that this perceived change in Debe's brand caused him any objective injury or harm, like a reduction in pay, benefits, or responsibilities.  The alleged negative feedback, unjustified coaching, and placement

6

on performance management also did not constitute materially adverse actions, since Debe again offered nothing to suggest that they caused him an objective injury or harm, like a reduction in pay, benefits, or responsibilities.

As for Debe's schedule change, he said that Miller switched him sometime in February 2017 to the morning shift for 3 months as part of a new 90-day rotation system. There is no evidence to suggest that Debe's temporary morning schedule was anything other than part of cyclical rescheduling effort and did not ultimately prohibit Debe from working the evening shift. As for his performance ratings, the midyear performance rating Miller gave Debe in August 2017 was the same rating given to Debe by the supervisors who preceded and followed Miller. As for whether Debe received a lower increase in salary due to his performance rating and schedule change, Debe received a larger merit-based salary increase under Miller's supervision, 2.4%, than he did under his previous supervisor, 2%. As for whether Debe lost out on the pay differential for working the evening shift due to his schedule change or whether his merits raises were lessened by the alleged adverse employment actions, the record reflects that he worked the evening shift in 2017, received the 10% pay differential for working the evening shift, and received a higher salary in 2018 after Miller's supervision. As a result, there was nothing to indicate that either the schedule change or the performance rating resulted in any objective injury or harm, like a reduction in pay, benefits, or responsibilities.

7

Moreover, even if Debe had introduced evidence of a materially adverse action, there was no genuine issue of material fact about the lack of a causal connection between Debe's protected activities and the alleged materially adverse actions. Notably, nothing in the record indicates that Miller was made aware of Debe's December 2016 internal complaint until <u>after</u> Debe had been transitioned to a new supervisor. As for the January 2017 meeting between Miller, Debe and a manager to address Debe's and Miller's issues, Miller's deposition and the related Coaching Tracker entry show that Debe's internal complaint was not mentioned at that meeting. Debe never testified otherwise, instead admitting that he did not know if or when Miller became aware of his complaint. And while emails in the record reflect that Miller had contacted the human resources department ("HR") about issues with Debe, Miller's conversation with HR <u>predated</u> Debe's internal complaint by several weeks, and there was no evidence that Miller ever received Debe's complaint. <u>See, e.g.</u>, <u>Cotton</u>, 434 F.3d at 1233 (holding that if alleged retaliatory conduct occurred before the employee engaged in protected activity, the two events cannot be causally connected). Thus, the record does not indicate that Miller was aware of Debe's internal complaint for purposes of a causal connection.

As for the other alleged retaliatory conduct that occurred before Debe's December 2016 internal complaint, again the record does not support a causal connection between his complaint and Miller's actions. Debe testified that Miller's

retaliatory conduct began early in their relationship, in July or August 2016, well before Debe filed his internal complaint in December 2016. See id. Moreover, Debe was placed on performance management and on a drop memorandum before Debe filed his internal complaint. As for whether the retaliatory conduct escalated after he filed his internal complaint, Debe testified that nothing changed with respect to Miller's treatment of him. Further, the lack of close temporal proximity between Debe's December 2016 internal complaint and Debe's temporary schedule change in February 2017 and the August 2017 drop memorandum do not support an inference of causal connection. Higdon, 393 F.3d at 1220; Thomas, 506 F.3d at 1364. Thus, there is no evidence to support a causal connection between Debe's protected activities and alleged materially adverse actions.

For these reasons, the district court did not err in concluding that there were no genuine disputes of material fact concerning the second and third prongs of a prima facie case of retaliation under of the McDonnell-Douglas framework. Absent a prima facie showing of retaliation, for purposes of summary judgment, we need not reach Debe's arguments about whether there was any genuine issue of material fact as to whether State Farm's legitimate, non-discriminatory reasons for the alleged employment actions were pretextual. Accordingly, we affirm the district court's grant of summary judgment in favor of State Farm.

**AFFIRMED.**

9