[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11931

Non-Argument Calendar

_____

BILLY PASLEY,

Plaintiff-Appellant,

*versus*

RELOGIO, LLC,
RECUPERO, LLC,
AGORA NOTUS, LLC,
COMPLETE PROPERTIES, LLC,
CC LICENSING, LLC, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 4:20-cv-00124-WMR

_____

Before NEWSOM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Billy Pasley appeals the district court's grant of summary judgment to Relogio, LLC; Recupero, LLC; Agora Notus, LLC; Trovami, LLC; Complete Cash Holdings, LLC; Complete Properties, LLC; Complete Aviation, LLC; CC Licensing, LLC; and SIC Certior Trust ("Entity Defendants"), his former employer, on his claims for a tangible employment action, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2(a), 2000e-3(a). First, he argues that the district court erred in *sua sponte* granting summary judgment to the Entity Defendants on his tangible-employment-action claim because he did not have sufficient advance notice or an adequate opportunity to demonstrate why summary judgment should not be granted. He argues that even if this was not error, the district court erred in granting summary judgment to the Entity Defendants on this claim. Second, Pasley argues that the district court erred in granting summary judgment to the Entity Defendants on his hostile-work-environment claim and that the Entity Defendants

were not entitled to an *Ellerth/Faragher*[1] defense. Third, he argues that the district court erred in granting summary judgment as to his Title VII retaliation claim. And lastly, Pasley argues that the district court erred in granting summary judgment to the Entity Defendants on his retaliation claim because it failed to analyze pretext and he showed a convincing mosaic of circumstantial evidence of retaliation.

## I.

We review *de novo* a district court's grant of summary judgment, "viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." *Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020) (quotation marks omitted). "A prevailing party is entitled to defend its judgment on any ground preserved in the district court," and we "may affirm for any reason supported by the record, even if not relied upon by the district court." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097 (11th Cir. 2021) (quotation marks omitted).

Summary judgment is appropriate when the record evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "But it is improper if a reasonable jury could find for the non-moving party." *Amy*, 961 F.3d at 1308. "After giving notice and a reasonable time to respond," a district court may: "(1)

---

[1] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f).

"A district court possesses the power to enter summary judgment *sua sponte* provided the losing party was on notice that []he had to come forward with all of h[is] evidence." *Burton v. City of Belle Gale*, 178 F.3d 1175, 1203 (11th Cir. 1999) (quotation marks omitted). "[T]his notice provision is not an unimportant technicality, but a vital procedural safeguard to a party's right to offer the best defense to any challenge." *Id*. at 1203-04 (quotation marks omitted). "But so long as the party against whom judgment will be entered is given sufficient advance notice and has been afforded an adequate opportunity to demonstrate why summary judgment should not be granted, then granting summary judgment *sua sponte* is entirely appropriate. *Id*.

We have distinguished between *sua sponte* granting of summary judgment where the case involves "purely legal questions based on complete evidentiary records" and cases "involving factual disputes where the non-moving party has not been afforded an adequate opportunity to develop the record." *Artistic Ent., Inc. v. City of Warner Robins*, 331 F.3d 1196, 1201 (11th Cir. 2003). We have held that "summary judgment should be granted *sua sponte* only in those circumstances in which the dismissed claims have been fully developed in the evidentiary record and the non-moving party has received adequate notice." *Id*.

Under Title VII, it is an unlawful employment practice for any employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006) (quoting 42 U.S.C. § 2000e-2(a)(1) (quotation marks and ellipses omitted)). To establish a claim for sexual harassment under Title VII, an employee must prove: (1) that he belongs to a protected group; (2) that he was subjected to unwelcome sexual harassment; (3) that the harassment was based on his sex; (4) "that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment"; and (5) "that a basis for holding the employer liable exists." *Id.*

To prove sexual harassment in violation of Title VII, a plaintiff may rely on two theories: (1) a tangible employment action or (2) a hostile work environment. *Id.* "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* "There also must be a causal link between the tangible employment action and the sexual harassment." *Id.* Temporal proximity between harassment and a tangible employment action may give rise to a genuine issue of fact as to causation. *Id.* at 1232. However, "[w]hen an employer contemplates a given action before the harassment takes place, temporal proximity

between the action and the incident of harassment alone will not suffice to show causation." *Id.*

Under a "cat's paw" theory, a plaintiff may show that the harasser employed the decisionmaker who ultimately made the adverse employment action to act as her "cat's paw," where "the decisionmaker acted in accordance with the harasser's decision without h[im]self evaluating the employee's situation." *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998). "In a cat's paw situation, the harasser clearly causes the tangible employment action, regardless of which individual actually signs the employee's walking papers," and "[i]n effect, the harasser *is* the decisionmaker, and the titular 'decisionmaker' is a mere conduit for the harasser's discriminatory animus." *Id.*

Here, the district court did not err in granting summary judgment to the Entity Defendants on his tangible employment action claim even though the Entity Defendants did not explicitly move for summary judgment on that claim because Pasley had adequate notice and an opportunity to respond. The notice provision is only necessary so that the nonmovant has an opportunity to respond and develop the record, which happened here. Pasley has not argued that he would have developed the record further on this claim had the Entity Defendants more clearly moved for summary judgment on the claim. Thus, this was enough for Pasley to adequately respond, develop evidence to support his claims, and demonstrate why he thought summary judgment should not be granted. *Burton*, 178 F.3d at 1203.

Even if the district court did err in this respect, the record shows that summary judgment should have been granted to the Entity Defendants because Pasley failed to show a causal connection between his supervisor's harassment and the Entity Defendants' decision to terminate his employment. Specifically, he did not demonstrate a causal link between his termination and the sexual harassment. Pasley gives heavy weight to the temporal proximity of three weeks between his strongest rebuff of Zirkelbach's advances and his termination. However, temporal proximity alone was not enough to show causation, especially here where there was undisputed evidence that Popham, the final decisionmaker on whether to terminate Pasley, was going to fire Pasley anyway before this happened. *Cotton*, 434 F.3d at 1232. The testimony from Zirkelbach, Green, and Popham confirmed that Popham was frustrated with Pasley's inability to perform work activities, specifically singling out the issue at the golf course. Most notably, Zirkelbach testified that Popham told her that he had asked her predecessors to terminate Pasley, but they failed to do so and implied that he would terminate her if she could not terminate Pasley. Popham testified that he had had a negative opinion of Pasley and thought he needed to be terminated because of his unprofessional manner since the day he met him.

Further, Popham testified that he was unaware of any complaints of sexual harassment by Pasley against Zirkelbach until after Pasley was terminated. Green, the HR manager, also testified that Pasley did not bring the sexual harassment allegations to HR's attention until after he was terminated. In sum, because the

evidence showed: (a) that Popham, the decisionmaker as to Pasley's termination, was planning to terminate Pasley even before Zirkelbach assumed her role as Pasley's supervisor and harassed Pasley, and (b) that Popham was not aware of the harassment until after Pasley was terminated and filed his EEOC charge, the mere temporal proximity between turning down Zirkelbach and his termination was insufficient to show causation. *Id.*

As to Pasley's "cat's paw" argument that Zirkelbach failed to protect his employment as she had done before after he turned down her sexual advances, these types of cases usually involve a sexual harasser who recommends to the decisionmaker that an employee be terminated because of retaliatory animus, and the decisionmaker accepts that recommendation without doing his own independent investigation. *Llampallas*, 163 F.3d at 1249. However, this case is more like an inverted cat's paw, where Zirkelbach never made a recommendation to terminate Pasley. Regardless, this theory also requires evidence that Zirkelbach "clearly cause[d]" the tangible employment action. *Id.* As above, the evidence shows that Popham had long desired to terminate Pasley's employment, that the decision was his acting independently, and that he was not a "mere conduit" for Zirkelbach's animus for turning down her sexual advances. *Id.* Accordingly, we affirm as to this issue.

## II.

"A hostile work environment claim under Title VII requires proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to

alter the conditions of the victim's employment and create an abusive working environment." *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1152 (11th Cir. 2020). To establish a hostile work environment claim, the plaintiff must establish the five elements listed above for sexual harassment claims. *Cotton*, 434 F.3d at 1231; *Fernandez*, 961 F.3d at 1153. As to the fifth element regarding the employer's liability, "an employer's direct liability can be established through evidence of two types of notice: actual and constructive." *Smelter v. So. Home Care Servs. Inc.*, 904 F.3d 1276, 1287 (11th Cir. 2018). "Actual notice is established by proof that management knew of the harassment, whereas constructive notice will be found where the harassment was so severe and pervasive that management should have known of it." *Id.*

If the plaintiff establishes vicarious liability without a tangible employment action, an employer may raise the affirmative *Faragher/Ellerth* defense that: (1) the employer exercised reasonable care to prevent and correct any harassing behavior; and (2) the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002).

We have held that "once an employer has promulgated an effective anti-harassment policy and disseminated that policy and associated procedures to its employees, then it is incumbent upon the employees to utilize the procedural mechanisms established by the company specifically to address problems and grievances."

*Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1300 (11th Cir. 2000) (quotation marks omitted).

Here, Pasley's failure to establish causation also defeats his hostile work environment claim, and even if it did not, the Entity Defendants were entitled to an *Ellerth/Faragher* defense because Pasley failed to report the harassment under their sexual harassment policy. Pasley disputes whether the Entity Defendants had actual or constructive notice of Zirkelbach's harassment, but there is no evidence in the record to support a finding of notice. He argues that the general atmosphere of his work environment that was prone to inappropriate sexual jokes, including from Popham, suggests that Popham should have been aware that Zirkelbach was harassing him. However, Popham testified that he did not know about the sexual harassment until Pasley filed the complaint with the EEOC. Indeed, Pasley admitted during his deposition that he never notified HR of any allegations against Zirkelbach or others. Thus, there was no actual notice that management knew of any harassment. *Smelter*, 904 F.3d at 1287. Although HR was aware of inappropriate comments in the workplace, Pasley does not argue that this alone rose to the level of a hostile work environment. And it is a stretch to argue that knowledge of inappropriate comments meant that Popham or others should have known that Pasley was being sexually harassed, and such a stretch is not supported by the evidence as Popham was not aware of such allegations until after Pasley was terminated. Thus, Pasley failed to establish a hostile work environment claim.

Even if this could establish such a claim, the district court correctly concluded that the Entity Defendants were entitled to a *Ellerth/Faragher* defense because they had a reasonable sexual harassment policy requiring the employee to ask the harasser to stop, record the conduct, and then talk to HR, Zirkelbach, or Popham. Indeed, Pasley admitted that he knew about the policy yet did not want to talk to HR and that he did not report the incident until after he was terminated. Although he states that it would have been futile to talk to Zirkelbach or Popham, he still could have talked to HR about the harassment, which he failed to do until after his termination. As this Court has held, because Pasley had access to the anti-harassment policy, he should have used the procedures used by the company to address the harassment. *Madray*, 208 F.3d at 1300. Thus, even if Pasley has established a hostile work environment claim, which he has not, the Entity Defendants would be entitled to a *Ellerth/Faragher* defense due to his failure to follow protocol. Accordingly, we also affirm as to this issue.

## III.

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). "The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Id*. (quotation marks omitted). "Once a plaintiff has established a prima facie case, the

employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." *Id.* The plaintiff retains the ultimate burden of "proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct." *Id.*

The Supreme Court has recognized in a case involving an employee, a biased supervisor with retaliatory animus, and an employer-decisionmaker that did not know of that animus that "if the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action . . ., then the employer will not be liable." *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011). "But the supervisor's biased report may remain a causal factor if the independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified." *Id.*

Here, the district court also correctly concluded that Pasley failed to establish a *prima facie* case of retaliation because he failed to show a causal connection between the harassment and the Entity Defendants' decision to terminate his employment. As above, the evidence shows that Popham was planning to terminate Pasley even before Zirkelbach assumed her role, and that Popham was not aware of the harassment until after Pasley was terminated and filed his EEOC complaint. The mere temporal proximity between Pasley turning down Zirkelbach and his termination does not rise to the level of causation. *Pennington*, 61 F.3d at 1266. And Popham's desire to terminate Pasley's employment was not actively caused

by Zirkelbach's alleged retaliatory animus and was, instead, based on his own perceptions of Popham's professionalism and job performance. *Staub*, 562 U.S. at 421. Accordingly, we also affirm as to this issue.

**IV.**

We have noted in a case where the district court failed to address pretext that "[i]if we were so inclined, we could remand the pretext issue to the district court to consider in the first instance. However, where the record is so clear as to the final outcome of the case and is sufficiently developed for us to decide the issue, we conclude[d] that a remand [t]here would be a waste of time and judicial resources." *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1236 n.5 (11th Cir. 2004).

A plaintiff may alternatively survive summary judgment for a retaliation claim by presenting "a convincing mosaic" of circumstantial evidence that supports a reasonable inference that the employer intentionally discriminated against her. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). In *Smith*, a case involving a discrimination claim, we concluded that a "convincing mosaic" of circumstantial evidence precluded summary judgment where it showed that the employer had a pretextual justification for terminating the employee, a substantial incentive to discipline Caucasian employees more than African-American employees, and injected race into its decision-making without adequate explanation. *Id.* at 1341. A "convincing mosaic" may exist where evidence shows, among other things, "(1) suspicious timing,

ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is *pretextual*." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quotation marks and ellipsis omitted).

We generally will not consider an issue in a civil appeal that was not raised in the district court unless: (1) it involves a pure question of law and refusal to consider it would result in a miscarriage of justice; (2) the appellant had no opportunity to raise the issue in the district court; (3) the interest of substantial justice is at stake; (4) the proper resolution is beyond any doubt; or (5) the issue presents significant questions of general impact or of great public concern. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004).

Here, we decline to consider Pasley's argument regarding pretext because the district court correctly concluded that he failed to establish a *prima facie* case of retaliation. We also decline to consider Pasley's convincing mosaic argument because he did not clearly raise it in the district court. Accordingly, we also affirm as to this issue.

**AFFIRMED.**