[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-11014
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 10, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00498 CV-W-E

LOUIE ALEXANDER,

                                          Plaintiff-Appellant,

                    versus

OPELIKA CITY SCHOOLS,

                                          Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(November 10, 2009)

Before DUBINA, Chief Judge, BIRCH and SILER,* Circuit Judges.

PER CURIAM:

_____

    *Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by
designation.

Louis Alexander, an African-American male, appeals the district court's grant of summary judgment in favor of his former employer, Opelika City Schools ("the Board"), in his hostile work environment claim brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). Alexander argues that the district court erred in granting the Board's motion for summary judgment because he suffered harassment that was sufficiently severe or pervasive to alter the terms and conditions of his employment. Alexander alleges that the harassment consisted of his supervisor and two coworkers referring to him as "boy," and his supervisor making a comment about a noose, during his two-year employment with the Board.

We review "a grant of summary judgment *de novo*, using the same legal standard as the district court." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1184 (11th Cir. 1997). Summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (quoting Fed. R. Civ. P. 56(c)). The evidence and inferences drawn from facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). In order to defeat summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S. Ct. at 1356. The non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

Title VII provides that it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of" such individual's race or color. 42 U.S.C. § 2000e-2(a). A harassment or hostile environment claim under Title VII is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (internal citation and quotation marks omitted); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993) (holding that Title VII is not implicated in the case where there is a mere utterance of an epithet which is offensive to an employee).

The employee has the burden of proving a hostile work environment claim. *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir. 1995). To establish a hostile work environment claim, a plaintiff must show: (1) he belongs to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic, such as race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or of direct liability. *Miller*, 277 F.3d at 1275. The requirement that the harassment be "severe or pervasive" contains an objective and subjective component. *Id.* at 1276. "Thus, to be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive." *Id.* (internal citation and quotation marks omitted).

In evaluating the objective severity of the harassment, we look at the totality of the circumstances and consider, *inter alia*: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* Title VII is not

4

a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283 (1998). Teasing, offhand comments, and isolated incidents that are not extremely serious will not amount to discriminatory changes in the terms and conditions of employment. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (*en banc*). For example, we have stated that "racial slurs allegedly spoken by coworkers had to be so 'commonplace, overt and denigrating that they created an atmosphere charged with racial hostility.'" *Edwards*, 49 F.3d at 1521 (quoting *EEOC v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068 (11th Cir. 1990)).

In 2006, the Supreme Court held that the word "boy" may be probative of discriminatory bias without the use of modifiers. *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456, 126 S. Ct. 1195, 1197 (2006). Specifically, the Supreme Court stated, in *Ash*, that "[a]lthough it is true the disputed word will not always be evidence of racial animus, it does not follow the term, standing alone, is always benign." *Id.* A number of factors determine whether the word "boy" is evidence of discriminatory animus, including the "context, inflection, tone of voice, local custom, and historical usage." *Id.*

To date, we have not directly applied this portion of the *Ash* holding in a published opinion. In *McCann v. Tillman*, 526 F.3d 1370 (11th Cir. 2008), *cert.*

5

*denied*, 129 S. Ct. 404 (U.S. Oct. 14, 2008), however, we found that a black employee's allegations that a white employee called her "girl" and two male black employees "boys," and that another coworker referred to a former black employee as a "nigger bitch" did not amount to severe or pervasive harassment. *Id.* at 1378-79. We stated that "[a]lthough offensive, such instances of racially derogatory language alone, extending over a period of more than two years, [were] too sporadic and isolated to establish that her employers' conduct was so objectively severe and pervasive as to alter the terms and conditions of her employment." *Id.* at 1379.

Upon review of the record and consideration of the parties' briefs, we discern no error. Even assuming Alexander established the first three elements of a hostile work environment claim, upon consideration of the totality of the circumstances, we conclude that the harassment was not sufficiently severe or pervasive as to alter the terms and conditions of his employment. *See Miller*, 277 F.3d at 1275. First, there was not sufficient evidence presented for a reasonable person to conclude that the harassment was frequent. *See id.* Alexander testified that he was called "boy" constantly, but could only recall eight specific instances over the course of two years where he was called "boy." Second, in examining the severity of the alleged conduct, the most severe comment was made by his

6

supervisor about how to tie a noose around a person's neck. This comment, however, was not directed toward Alexander, and Alexander testified that he did not know whether this comment referred to black people. Further, none of the alleged racial comments contained threats of physical violence, and he did not demonstrate that the comments interfered with his job performance. *See Edwards*, 49 F.3d at 1521. Accordingly, we affirm the district court's grant of summary judgment in favor of the Board.

**AFFIRMED.**