[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12239

_____

D.C. Docket No. 2:16-cv-00841-SPC-MRM

ALEXIS SOTO FERNANDEZ,

Plaintiff - Appellant,

versus

TREES, INC.,
d.b.a. Trees Acquisition, Inc.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 9, 2020)

Before JILL PRYOR, GRANT and ANDERSON, Circuit Judges.

JILL PRYOR, Circuit Judge:

Alexis Soto Fernandez, a former crew foreperson for Trees, Inc., appeals the district court's grant of summary judgment in Trees's favor on his hostile work environment and national origin discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act ("FCRA").  After careful review, and with the benefit of oral argument, we affirm in part and reverse in part.  We agree with the district court that Fernandez's national origin discrimination claim fails as a matter of law because he failed to establish a prima facie case for this claim.  But we disagree with the district court's conclusions that, as a matter of law, the harassment Fernandez suffered was not severe or pervasive.  We therefore reverse the grant of summary judgment for Trees on Fernandez's hostile work environment claim and remand that claim to the district court for further proceedings.

## I.     BACKGROUND

### A.     Factual Background[1]

Trees, Inc. provides "utility line clearance and vegetation management for the utility industry," including trimming and removing tree limbs near active power lines and utility poles for county and municipality utility companies.  Doc.

---

[1] On review of an order granting a defendant's motion for summary judgment, we view the facts in the light most favorable to the plaintiff. *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002).  In recounting the facts here, we note where facts are disputed and at this stage resolve the disputes in Fernandez's favor.

57-4 at 2.[2]  Given the dangerous nature of its work, Trees prioritizes employee safety; employees know that safety violations can be cause for immediate termination.

Fernandez, who is Cuban, worked for Trees from 2015 to 2016 as a crew foreperson.  Fernandez's duties included "driving a company truck to job sites, operating the machinery used to trim trees, and trimming trees located along powerlines." *Id.* at 3.  Adam Soto supervised Fernandez and his crew, along with a larger team of employees.  Soto's responsibilities included scheduling Fernandez for shifts and directly supervising Fernandez's regularly scheduled shifts

About two months before Fernandez left his employment with Trees, Soto and another Cuban worker had a physical altercation.  After this altercation, Soto began to make derogatory comments about Cubans to the workers he supervised, such as:  "shitty Cubans;" "fucking Cubans;" and "crying, whining Cubans."  Doc. 57-1 at 17.  Soto also declared, "new policy in the company, no more Cuban people." *Id.*  Fernandez testified that this type of behavior continued on a near-daily basis, and all the workers on site heard it.  Fernandez's co-workers similarly testified that Soto repeatedly spoke disparagingly to the Cuban workers on a near-daily basis.

---

[2] "Doc. #" refers to the numbered entry on the district court's docket.

Fernandez expressed displeasure with the comments at a team meeting and asked Soto not to make general negative statements about Cubans, but instead to address any concerns with workers' performance to those specific workers. Other workers also complained about Soto's conduct. Despite Fernandez's and his co-workers' complaints, Soto's behavior continued.

About two months after the initial altercation between Soto and Fernandez's co-worker, Fernandez attempted to commit suicide at the job site by dousing himself with gasoline and reaching for a lighter; a coworker tackled him before he succeeded. Fernandez was terminated.[3] After Fernandez left Trees, some employees signed a statement attesting that there was no discrimination at Trees. At least one said he signed only so that he would not lose his job.

## B.    Procedural Background

Fernandez filed this action against Trees in the United States District Court for the Middle District of Florida. He brought hostile work environment and national origin discrimination claims under Title VII and the FCRA. Trees moved for summary judgment on both claims, arguing that Soto's alleged misconduct was neither severe nor pervasive and that Fernandez failed to establish a prima facie

---

[3] The parties dispute whether Fernandez was fired or quit. For this appeal only, Trees agrees to treat Fernandez as having been terminated.

4

case of national origin discrimination.  The district court agreed, granting Trees's

motion.  This appeal followed.

## II.    STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment,

construing the facts and drawing all reasonable inferences in favor of the

nonmoving party.  *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291-92 (11th

Cir. 2012).  Summary judgment is appropriate if the record gives rise to "no

genuine dispute as to any material fact," such that "the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material

fact exists when "the evidence is such that a reasonable jury could return a verdict

for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).

## III.    DISCUSSION

Fernandez contends that Trees discriminated against him because of his

national origin by (1) permitting a hostile work environment and (2) terminating

him.  We separately consider whether the district court erred in granting summary

judgment for Trees on each claim.[4]

---

[4] Fernandez's state law claims require no separate discussion because the FCRA is
modeled after Title VII, and we use the same framework to analyze claims under it.  *Alvarez v.
Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010) ("Because the FCRA is
modeled after Title VII, and claims brought under it are analyzed under the same framework, the

5

## A.     Hostile Work Environment Claim

Title VII of the Civil Rights Act of 1964 prohibits employers from

discriminating "against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color,

religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  A hostile work

environment claim under Title VII requires proof that "the workplace is permeated

with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or

pervasive to alter the conditions of the victim's employment and create an abusive

working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)

(internal quotation marks and citation omitted).

To establish a hostile work environment claim, a plaintiff must show that:

(1) he belongs to a protected group; (2) he suffered unwelcome harassment; (3) the

harassment was based on a protected characteristic of the employee, such as

national origin; (4) the harassment was sufficiently severe or pervasive to alter the

terms and conditions of employment and create a discriminatorily abusive working

environment; and (5) the employer is responsible for that environment under a

theory of either direct liability or vicarious liability.  *Miller v. Kenworth of Dothan,*

*Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).  The district court concluded that

---

state-law claims do not need separate discussion and their outcome is the same as the federal
ones." (citations omitted)).

6

Fernandez failed to establish the fourth element.  We therefore focus on whether a reasonable jury could conclude that the harassment Fernandez suffered was sufficiently severe or pervasive.

To show that harassment was sufficiently severe or pervasive to alter the terms or conditions of his employment, an employee must prove that his work environment was both subjectively and objectively hostile.  *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc).  Put differently, the employee must first establish that he "subjectively perceive[d] the environment to be abusive." *Harris*, 510 U.S. at 21.  He then must satisfy the objective component by showing that his work environment was one "that a reasonable person would find hostile or abusive." *Id.*  Trees does not dispute that Fernandez's work environment was subjectively hostile, so we move on to examine the objective prong.

Turning to the objective inquiry, we consider four factors when evaluating whether harassment was objectively hostile:  "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza*, 195 F.3d at 1246.  Although these factors help guide the inquiry, "the objective element is not subject to mathematical precision." *Bryant v. Jones*, 575 F.3d 1281,

7

1297 (11th Cir. 2009).  We must view the evidence "cumulatively and in the totality of the circumstances."  *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc).  When we do so here, we conclude that a reasonable jury could find the harassment objectively hostile.

Beginning with the first factor, Fernandez provided ample evidence that the harassment he faced was frequent—he testified that Soto made derogatory remarks, including phrases such as "shitty Cubans," "fucking Cubans," and "crying, whining Cubans" on a near-daily basis.  Doc. 57-1 at 17.  Fernandez's co-workers identified more than 10 specific examples of discriminatory remarks made during the relevant period.  Even if these examples were the only discriminatory remarks Soto made during Fernandez's final two months of employment, this Court has held that harassment was pervasive when it occurred at a lower frequency.  *See Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) (holding that harassment consisting of "roughly fifteen separate instances of harassment over the course of four months" was sufficiently pervasive).

Citing our unpublished decisions in *Godoy v. Habersham County*, 211 F. App'x 850 (11th Cir. 2006), and *Alexander v. Opelika City Schools*, 352 F. App'x 390 (11th Cir. 2009), Trees argues that the evidence showing that Soto's harassment occurred "every other day" or "nearly every day" was conclusory and

cannot establish the requisite frequency for a hostile work environment claim because Fernandez was required to identify specific instances of Soto's discriminatory misconduct.  This argument lacks merit.  Even if they were precedential, neither of these cases stands for the proposition that a plaintiff must recall every specific instance of discriminatory conduct to establish that the conduct was frequent.  And in neither case did the evidence reach the level of specificity found here.

To illustrate, in *Alexander*, the African American plaintiff testified that he was called "boy" "constantly," but he could only recall eight such instances during a two-year period.  352 F. App'x at 393.  Here, by contrast, Fernandez gave specific examples of Soto's disparagement of Fernandez and other Cuban workers—for instance, Soto described them as "crying, whining Cubans" and announced a "new policy" of "no more Cubans."  And he testified that such comments occurred daily or every other day over a two-month period. Fernandez's co-workers corroborated his testimony, identifying at least 10 specific instances of Soto's misconduct.  This is materially different from Alexander's use of a vague term like "constantly" and identifying only eight specific incidents over two years.  Thus, even if *Alexander* were binding authority, it is inapposite.  As is *Godoy*, where "[o]ther than testifying that Lt. Garrett referred to him as 'Brazilian bastard' '*several times*,' Plaintiff . . . failed to point to evidence that shows the

9

frequency of the allegedly harassing conduct." *Godoy v. Habersham Cty.,* No. 2:04-CV-211-RWS, 2006 WL 739369, at *10 (N.D. Ga. Mar. 21, 2006) (emphasis added) (footnote omitted), *aff'd*, 211 F. App'x 850 (11th Cir. 2006).[5]

As to the second factor, a reasonable jury could conclude that the harassment was sufficiently severe. Title VII is implicated only where a workplace is "permeated with discriminatory intimidation, ridicule and insult," in contrast to the "mere utterance of an epithet." *Harris*, 510 U.S. at 21 (alteration adopted) (internal quotation marks omitted). Trees contends that the evidence in this case "established at most that [Fernandez] was subjected to a few instances of off-handed comments by Adam Soto that amount[ed] to nothing more than a mere offensive utterance." Appellee Br. at 24. We disagree. Soto continually—often in vulgar terms—disparaged, ridiculed, and insulted all the employees in a protected class and persisted in doing so despite Fernandez's and other Cuban employees' complaints and specific requests that he stop. We therefore have no trouble concluding that the misconduct went beyond the "mere utterance of an epithet." *Harris*, 510 U.S. at 21 (alteration adopted) (internal quotation marks omitted).

Our decision in *Reeves* is instructive. There, the female plaintiff's co-workers repeatedly used gender-specific derogatory terms in a generally

---

[5] Our decision in *Godoy*, 211 F. App'x at 852, did not detail the facts underlying the hostile work environment claim. Thus, we cite to the district court's recital of the facts of record.

10

humiliating, vulgar, and degrading way. *See* 594 F.3d at 811. We concluded that such conduct could support the reasonable inference that the harassment was sufficiently severe to give rise to a hostile work environment claim, even though the comments were not directed specifically to the plaintiff, because the offensive conduct was targeted at a protected class. *See id.* We also pointed to the fact that the harassment continued despite the plaintiff's complaints. *See id.* at 812.

Just as the comments in *Reeves* "allow[ed] for the inference to be drawn that the abuse did not amount to simple teasing, offhand comments, or isolated incidents, but rather constituted repeated and intentional discrimination," *id.* (citation omitted), so too do Soto's comments here. Although perhaps not as offensive as the comments in *Reeves*, Soto's remarks repeatedly targeted a protected group with vulgar and derogatory language and continued unabated after complaints by Fernandez and his co-workers. Thus, a reasonable jury could conclude that Soto's harassment was sufficiently serious to give rise to a hostile work environment claim.

Fernandez has also satisfied the third factor by demonstrating that Soto's conduct was sufficiently humiliating to support a hostile work environment claim.[6]

---

[6] Fernandez also contends that Soto's conduct was physically threatening because Soto would "try to intimidate [the Cuban workers] into . . . put[ting] up with dangerous conditions." Doc. No. 59-1 at 1. Fernandez offers as evidence of this contention only his declaration in opposition to Trees's motion for summary judgment. Trees argues that we cannot consider this declaration because its translation from Spanish was not properly authenticated. Having

11

In *Miller*, we said that the fact that derogatory comments were made in the presence of co-workers enhances the level of humiliation suffered.  277 F.3d at 1277.  Fernandez and his co-workers testified that Soto frequently degraded Cuban workers, including Fernandez, in meetings and in front of other teams of workers at job sites.  Thus, Fernandez offered evidence that Soto's conduct was sufficiently humiliating to satisfy the third factor.[7]

Fernandez's evidence as to the fourth factor, interference with job performance, is weaker.  The only evidence he offered on the fourth factor was that the stress from Soto's misconduct drove him to depression and caused him to attempt suicide at a job site.  Although more attenuated than typical interference-with-job-performance arguments, we cannot say on this record that his on-the-job suicide attempt was wholly unrelated to his job performance.  In fact, the incident led to his getting fired.  Regardless, a lack of evidence of impact on job

---

concluded that Soto's conduct was humiliating, we need not reach whether the conduct was also physically intimidating, and so we do not consider Fernandez's declaration.

[7] Trees argues that we have previously held, in an unpublished opinion, that comments like Soto's were insufficiently humiliating.  *See Dominguez v. Lake Como Club*, 520 F. App'x 937, 938-41 (11th Cir. 2013) (holding that comments such as, "I hate fuckin' Cubans" and "we don't have any Mexicans working here[,] but we got the next best thing, a Cuban" were not sufficiently humiliating).  But we find this nonbinding case unpersuasive.  In *Dominguez*, we affirmed the district court's grant of summary judgment without specifically addressing each of the four factors of the objective prong of a hostile work environment claim.  Thus, this case does not undercut our conclusion that Soto's comments were sufficiently humiliating for Fernandez.  Additionally, the facts of *Dominguez* were materially different:  There, the plaintiff complained of a few isolated comments by various co-workers, his supervisor, and the supervisor's wife.  By contrast, Fernandez demonstrated persistent, near-daily harassment from his supervisor at meetings and on the job site, despite Fernandez's and other employees' complaints.

12

performance is not fatal:  "The Supreme Court has cautioned that harassment need not be . . . so extreme that it produces tangible effects on job performance in order to be actionable."  *Miller*, 277 F.3d at 1277.  Fernandez's claim therefore does not fail simply because he provided somewhat attenuated evidence on the impact of the harassment on his job performance.

The Supreme Court has emphasized that "no single factor" is necessary to satisfy the objective inquiry of a hostile work environment claim.  *Harris*, 510 U.S. at 23.  Considering the totality of the circumstances, guided by the appropriate factors, we conclude that Fernandez provided evidence sufficient to raise a material issue of fact whether the harassment was objectively severe or pervasive.

## B.    National Origin Discrimination Claim

For his national discrimination claim, Fernandez argues that Soto's comment, "new policy in the company: no more Cuban people," was direct evidence of discrimination, and summary judgment was therefore inappropriate. We cannot agree.

Where a case of discrimination is proven by direct evidence, the burden shifts to the defendant to prove "by a preponderance of the evidence that the same decision would have been reached even absent the presence of the discriminatory motive."  *Miles v. M.N.C. Corp.*, 750 F.2d 867, 875-76 (11th Cir. 1985).  Direct evidence of discrimination is evidence that "reflects a discriminatory or retaliatory

13

attitude correlating to the discrimination or retaliation complained of by the employee" and, "if believed, proves the existence of a fact without inference or presumption." *Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1086 (11th Cir. 2004) (alterations adopted) (internal quotation marks omitted). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Id*. (internal quotation marks omitted). "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." *Id*.

Fernandez contends that Soto's comment is direct evidence of discrimination because it "directly shows he no longer wants to have Cubans working at the company as a new company policy." Appellant's Br. at 30. He compares this to the statement, "fire all the old people," in *Wheat v. Rogers & Willard, Inc.*, 271 F. Supp. 3d 1327, 1331 (S.D. Ala. 2017), in which a district court in this Circuit held that the statement was direct evidence of discriminatory intent to fire people precisely because of their age. Soto's statement, however, falls short of this standard.

Here is why: Soto's statement "new policy in the company: no more Cuban people" might provide direct evidence for a failure-to-hire claim, but that is not so for Fernandez's firing claim. To prove that Trees terminated Fernandez because of national origin discrimination, Soto's statement requires an inference—that Soto's

14

"new policy" extended beyond hiring "no more Cuban people," but also to firing those Cubans who were already there.  Thus, the statement is circumstantial rather than direct.  *See Wilson*, 376 F.3d at 1086.  In similar instances, this Court has declined to classify comments about one employment context as direct evidence of discrimination in another context.  *See, e.g.*, *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358-59 (holding that the decisionmaker's comment that "the company needed . . . young men . . . to be promoted" did not constitute direct evidence of age discrimination for a termination claim).

Soto's statement—although reprehensible—is not direct evidence that Fernandez was fired because of his national origin.  And because Fernandez relies solely on his direct evidence argument to challenge the district court's grant of summary judgment on this claim, he has failed to establish that summary judgment was inappropriate.

## IV.   CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part.  We affirm the district court's grant of summary judgment for Trees on Fernandez's national origin discrimination claim, and we reverse the district court's ruling on Fernandez's hostile work environment claim and remand that claim to the district court for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

15