[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-12040

_____

VANESSA E. DIXON,

Plaintiff-Appellant,

*versus*

DTA SECURITY SERVICES,

Defendant,

NATIONAL SECURITY OF ALABAMA, INC.,
d.b.a. DTA Security Services,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:18-cv-00013-RAH-WC

_____

Before JILL PRYOR, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Vanessa Dixon, an African American female, appeals the district court's order granting summary judgment in favor of National Security of Alabama, Inc., d/b/a DTA Security Services (DTA), She argues that genuine issues of fact remained as to her claims for discrimination, retaliation, and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 (Title VII). With the benefit of oral argument, we affirm in part and reverse in part.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

DTA, a security services company, employed Dixon from May 29, 2014 to May 28, 2015 as a certified security officer. For most of her time at DTA, Dixon worked a post at Huntingdon College in Montgomery, Alabama. Dixon says she began to experience discrimination when Captain Lena Williams, a white female, was appointed as her supervisor in January 2015. Dixon claims that a co-worker told her that Williams was "not fond of black people" and that she wanted to make the Huntingdon post "all white

again." Almost immediately after Williams took over as supervisor, she began targeting Dixon because of her race, according to Dixon.

Dixon alleges that Williams treated her improperly in the following ways. On multiple occasions, Williams told Dixon that if she did not correctly handle company paperwork, Williams would "hang" and then "drag" Dixon to the main office. Dixon specifically remembers that Williams made this comment on Martin Luther King Jr. Day in 2015. On another occasion, Williams threw paperwork across Dixon's car and made Dixon pick it all up in front of DTA clients. Williams also apparently told a client she did not like African Americans and that she would sometimes follow Dixon when she was on duty to watch her perform her job. Williams also had Dixon complete tasks for white employees, such as gassing up their patrol cars and picking up newspapers, boxes, and the mail for them.

Dixon further alleges that Williams discriminated against and harassed Tina Tait, another African American DTA employee.[1] Tait reported this conduct and Dixon participated in the investigation as a witness for Tait.

Dixon alleges that Williams's behavior worsened after she reported Williams to other supervisors at DTA and filed a charge of discrimination with the Equal Employment Opportunity

---

[1] Tina's last name is spelled both "Tate" and "Tait" throughout the record. The district court spelled it as "Tait," so we adopt this same spelling.

Commission (EEOC).  For instance, Dixon claims that Williams continued to threaten to "hang" and "drag" her, and that Dixon noticed Williams following her and watching her while she was working.  Dixon says that Major Harry Christian, to whom she reported Williams's behavior, ignored her complaints and her EEOC charge.

Eventually, Dixon was reassigned to a new post at a warehouse in Montgomery.  Dixon claims that she was reassigned in retaliation for her filing the EEOC charge.  DTA says the reassignment was due to a cut back in hours for employees.  Ultimately, this new post did not work out for Dixon—she was unable to close one of the gates at the warehouse due to a longstanding back condition.  When Dixon told Major Christian of this issue, he told her she would be reassigned to a different post.  After this, Dixon called DTA multiple times to inquire about her new assignment, but a DTA representative kept hanging up on her.  Eventually, Dixon visited a DTA post and Major Christian told her to leave and that she would be trespassing if she returned.  Dixon never received a new assignment and therefore never worked a post for DTA again.

In January of 2018, Dixon filed a pro se complaint in the United States District Court for the Middle District of Alabama.  In February of 2018, Dixon filed a pro se amended complaint against DTA, alleging discrimination and retaliation on the basis of race in violation of Title VII and 42 U.S.C. section 1981.

In August of 2019, DTA moved for summary judgment. The district court granted DTA's motion and dismissed all of

Dixon's claims.  The court reasoned that Dixon did not establish a prima facie case of race discrimination under Title VII and section 1981 because she did not provide enough direct or circumstantial evidence to support her claim.  It further found that even if Dixon established a prima facie case, she failed to demonstrate that DTA's action to reassign her was pretextual, and therefore her discrimination claims would fail regardless.  Next, the district court found that Dixon's Title VII retaliation claim failed because she did not demonstrate "but-for" causation and therefore did not establish a prima facie claim of retaliation.  And last, the district court concluded that Dixon had not pleaded a Title VII hostile-work-environment claim in her amended complaint.  The district court alternatively concluded that the record did not demonstrate that the conduct she complained of was severe or pervasive enough to support a hostile-work-environment claim.  This appeal followed.

## II.    STANDARD OF REVIEW

We review the grant of summary judgment de novo, applying the same legal standards as the district court.  *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010).  "We will affirm if, after construing the evidence in the light most favorable to the non-moving party, we find that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law."  *Id.* at 1263–64.

After a movant meets her initial burden to demonstrate the absence of a genuine issue of material fact, the burden then shifts to the non-movant to establish that there is a genuine issue of

material fact that precludes summary judgment. *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311–12 (11th Cir. 2018). The non-movant must go beyond the pleadings and present competent evidence in the form of affidavits or as otherwise allowed in Fed. R. Civ. P. 56(c), setting forth "specific facts [to show] that there is a genuine issue for trial." *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

## III.    DISCUSSION

Dixon makes three arguments on appeal. First, she argues that the district court erred in concluding that she failed to establish a prima facie case of race discrimination. Second, she claims that the district court erred in concluding that she failed to establish a prima facie case of retaliation. And third, Dixon argues that the district court erred in finding that she failed to demonstrate a dispute of material fact concerning her hostile-work-environment claim. We address each argument in turn.

### *Race Discrimination*

Title VII prohibits employers from discharging an individual, or otherwise discriminating against that individual with respect to her compensation, terms, conditions, or privileges of employment "because of" that individual's race. 42 U.S.C. § 2000e-2(a)(1). And 42 U.S.C. section 1981 similarly prohibits intentional race discrimination in employment. *See Webster v. Fulton Cnty.*, 283 F.3d 1254, 1256 (11th Cir. 2002). Disparate treatment claims, like this one, brought under Title VII and section 1981 are

evaluated using the same analytical framework and require proof of discriminatory intent, which can be demonstrated through either direct or circumstantial evidence. *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 920 (11th Cir. 2018).

Title VII and section 1981 discrimination claims that rely on circumstantial evidence are evaluated under the *McDonnell Douglas* burden-shifting framework. *Hornsby-Culpepper*, 906 F.3d at 1312 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, the plaintiff bears the initial burden of presenting evidence sufficient to establish a prima facie case of discrimination. *Id.* If the plaintiff successfully establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment decision against the plaintiff. *Id.* The burden then shifts back to the plaintiff to show that the employer's proffered reason was mere pretext for discrimination. *Id.*

An appellant must clearly and specifically identify in her brief any issue she wants the appellate court to address, otherwise it will be deemed abandoned. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). When a district court judgment is based upon multiple, independent grounds, an appellant must convince us that each enumerated ground for the judgment against her is incorrect. *Id.*

Because Dixon does not challenge the district court's alternative finding that DTA's proffered reasons for her reassignment and termination were not pretextual, she has abandoned any such

challenge on appeal. *Id.* ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, [s]he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed."). The district court found that Dixon did not establish a prima facie case, *and* that even if she did, her claim failed because she did not demonstrate pretext under the *McDonnell Douglas* framework. And on appeal Dixon only argues that she established a prima facie case of discrimination—she does not address pretext. Therefore, given the absence of an argument demonstrating that DTA's reason for the elimination of Dixon's job is a pretext for discrimination, we affirm the district court's grant of summary judgment dismissing Dixon's race-based disparate-treatment claim.

### Retaliation

Title VII also prohibits an employer from retaliating against an employee for opposing an unlawful employment practice. 42 U.S.C. § 2000e-3(a). And while section 1981 does not expressly protect individuals from retaliation, the Supreme Court has confirmed that section 1981 prohibits retaliation. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 452–57 (2008); *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc). Section 1981 and Title VII retaliation claims are analyzed under the *McDonnell Douglas* framework. *Gogel*, 967 F.3d at 1142.

To establish a prima facie case of retaliation, a plaintiff must establish that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there

was some causal connection between the two events. *Id.* at 1134–35. Here, the district court found that Dixon failed to meet her burden as to the third requirement—causation.

To demonstrate a causal connection, the plaintiff must show that (1) the decision-maker knew of her protected activity, and (2) the protected activity and adverse action were not wholly unrelated. *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002). A plaintiff satisfies this first element by showing that the decision-maker was aware of the plaintiff's formal complaint prior to the adverse employment action. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999). When the protected activity and the adverse action occurs in close proximity, a plaintiff can generally establish the second element concerning relatedness. *Shannon*, 292 F.3d at 716–17.

Additionally, at summary judgment the employee must prove that "the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013); *see also Gogel*, 967 F.3d at 1135 n.13. In *Gogel*, we recognized that "[c]ircuit courts . . . have been inconsistent on the question [of] whether *Nassar*'s but-for causation standard applies at the *prima facie* stage of the summary judgment analysis or . . . at the pretext stage of the analysis." *Gogel*, 967 F.3d at 1135 n.13. There, we assumed *Nassar*'s but-for test applied at the pretext stage of the *McDonnell Douglas* framework, not during the prima facie analysis. *Id.*; *see also Knox v. Roper Pump Co.*, 957 F.3d 1237, 1244–45 (11th Cir. 2020).

The district court erred in finding that Dixon failed to establish a prima facie case of retaliation. The record shows that DTA was aware that Dixon engaged in protected activity by filing her EEOC charge in mid-April 2015, before her transfer and termination in late May or early June 2015. There were approximately six weeks between when her employer found out about her protected activity and her reassignment and termination, which is within the timeframe that this court has deemed sufficient to establish causation. *See Farley*, 197 F.3d at 1337 (finding that a causal nexus was established when the supervisor knew of an EEOC charge and terminated that employee seven weeks later).

Dixon established the three elements necessary to prove a prima facie case. *Gogel*, 967 F.3d at 1134–35. She engaged in protected activity when she filed a charge of discrimination with the EEOC, she suffered a materially adverse employment action when she was terminated by DTA, and, given the short time frame, these two events were casually connected. Therefore, we reverse the district court as to this issue and remand for further proceedings.

*Hostile-Work-Environment Claim*

To establish a prima facie case for a hostile-work-environment claim, the plaintiff must show that: (1) she belonged to a protected group; (2) she suffered unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive working environment; and (5) a basis exists for holding the employer liable.

*Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1153 (11th Cir. 2020). We do not reach the question of whether Dixon's hostile-work-environment claim presented a jury question because she failed to raise this claim in her amended complaint and failed to challenge the district court's conclusion that she did not plead this claim.

In Dixon's amended complaint, she alleged that she was racially discriminated against at work when she was verbally reprimanded by her supervisor, reassigned to a new post where she could not perform the job duties, and terminated. Dixon also alleged that DTA retaliated against her because of her complaints about racial discrimination. But Dixon did not raise a hostile-work-environment claim in her amended complaint. She did not allege that she was subject to severe or pervasive racial harassment that created an abusive work environment. Dixon's amended complaint did not even include the words "hostile work environment," "harassment," or "abusive."[2]

Reviewing the amended complaint, the district court explained that Dixon had only "vaguely" alluded to a hostile-work-environment claim in her response to DTA's summary judgment motion but had not "actually [pleaded] that claim" in her "controlling pleading." Although the district court recognized that

---

[2] Even assuming that Dixon's original complaint raised a hostile work environment claim, the amended complaint superseded her original complaint and rendered it a "legal nullity." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

unpleaded claims "should generally be dismissed out of hand," it proceeded to analyze her hostile-work-environment claim "as if Dixon had in fact" pleaded such a claim.  The district court then concluded that, even if Dixon had pleaded a hostile-work-environment claim, DTA was entitled to summary judgment.  Thus, the district court gave two reasons for rejecting a hostile-work-environment claim:  (1) it was not pleaded in Dixon's amended complaint; and (2) even if Dixon had pleaded this claim, the record did not present a jury question as to whether Dixon was subjected to a hostile work environment.  Dixon challenges on appeal only the second basis for the district court's ruling.

We conclude that Dixon's arguments about a hostile-work-environment claim fail for two reasons.  First, we have said that a plaintiff may not "raise new claims at the summary judgment stage." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004).  Because Dixon's amended complaint did not raise a hostile-work-environment claim, the district court's rejection of this new claim at the summary judgment stage was not error.

Second, Dixon's failure to challenge the first basis for the district court's ruling—its conclusion that she had not pleaded a hostile-work-environment claim—is also fatal to her appeal.  As we explained earlier, "[t]o obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against him is incorrect." *Sapuppo*, 739 F.3d at 680.  Dixon "fail[ed] to challenge properly on appeal one of the grounds on which the district court

based its judgment," and so she "is deemed to have abandoned any challenge of that ground[.]" *See id.* Because Dixon abandoned any challenge to the district court's summary judgment as to the unpleaded hostile-work-environment claim, we must affirm this part of the summary judgment.

## IV.    CONCLUSION

In sum, we affirm the district court's grant of summary judgment in favor of DTA as to the discrimination and hostile-work-environment claims, but we reverse and remand its grant of summary judgment as to Dixon's retaliation claim.

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**