[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-10838

Non-Argument Calendar

_____

AUDREY BRANNON,

Plaintiff-Appellant,

versus

SECRETARY, DEPARTMENT OF
VETERANS AFFAIRS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 1:20-cv-00182-JRH-BKE

————————————

Before WILSON, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Appellant Audrey Brannon appeals the dismissal of her amended complaint, which alleged various claims against her former employer, the Secretary of the Department of Veterans Affairs (VA).  After careful review, we affirm.

## I.

Appellant Brannon alleged that, while working as a social worker and dietician at the Charlie Norwood Veterans Affairs Medical Center in Augusta, Georgia, she endured multiple violations of federal law.  Brannon, a Black female diagnosed with diabetes, listed the following six counts: 1) harassment, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. (Rehabilitation Act); 2) retaliatory harassment, in violation of the Rehabilitation Act; 3) race harassment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII); 4) retaliatory harassment, in violation of Title VII; 5) disparate treatment, in violation of Title VII; and 6) disparate treatment, in violation of the Rehabilitation Act.

In support of her claims, Brannon identified four actions taken by the VA.  First, Brannon alleged that the VA improperly placed her on a "performance improvement plan" ("PIP") in December 2015.  She claimed that the VA did this without prior

counseling, in contravention of VA policies, and in disregard of her previous performance reviews.  Brannon alleged that the decision was "pretextual because in fact there were no performance issues or the performance issues as stated in PIP," and that her later performance on PIP "was evaluated differently than similarly situated non-white employees, non-disabled employees, and employees who had not engaged in protected activity."

Second, Brannon cited the fact that the VA proposed to remove her in November 2016.  Brannon claimed that this proposed removal (based on a failure to maintain the standards of PIP) was "pretextual," "excessive," and based on her supervisor's "cherry picked[,] unsupportable data."  Although the proposed removal was not effectuated, Brannon alleged that her "performance in the proposed removal was evaluated differently than similarly situated non-white employees, non-disabled employees, and employees who had not engaged in protected activity."

Third, Brannon claimed that the VA wrongly denied her the opportunity to work weekend overtime shifts.  Although her amended complaint stated this occurred as recently as July 2017, the Equal Employment Opportunity Commission (EEOC) complaint attached with her original district court filing noted that these denials started in December 2015.  Again, Brannon alleged that these rejections were "pretextual" and "based on falsified and untrue performance reasons."

Fourth, Brannon alleged that the VA wrongly denied her the opportunity to participate on an EEOC committee for her VA's

"April 2017 Annual Black History Special Emphasis Program." Brannon claimed that the VA issued this rejection despite her eagerness to participate in the program and the short time commitment required. She argued there was no legitimate reason for this denial, but rather, the VA based this decision on her race and disability.

Brannon contacted a counselor with the EEOC on March 20, 2017, and then filed a formal complaint on July 5, 2017. On September 10, 2020, an administrative judge issued a determination that the evidence did not support Brannon's claims of discrimination and retaliation. Brannon subsequently filed initial and amended complaints in the district court for the Southern District of Georgia.

## II.

The district court dismissed Brannon's entire amended complaint for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). In doing so, the district court first found as untimely Brannon's claims with regard to her 1) placement on PIP, 2) proposed removal from the VA, and 3) denial of weekend shifts. This, in the district court's view, warranted the dismissal of Counts I, III, V, and VI. As a result, only Brannon's claims for retaliatory harassment under the Rehabilitation Act and Title VII (Counts II and IV, respectively), remained standing. Both claims were predicated on the alleged denial of EEOC committee participation in April 2017. However, the district court dismissed these retaliation claims as well, finding that

the denial of committee participation did not amount to an adverse employment action.

Crucial for this appeal, in Brannon's response to the VA's motion to dismiss, she argued that her claims were not time barred because she also asserted a hostile work environment claim, which is actionable so long as one act contributing to the toxic environment occurred within the statutory filing period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). The district court rejected this argument because it found that Brannon "did not assert a claim for a hostile work environment. Rather, [she] raised this claim for the first time in her response brief to the [motion to dismiss]." The district court noted that none of Brannon's enumerated counts mentioned a "hostile work environment" and that, in fact, Brannon only used the phrase once in her amended complaint—in the introductory paragraph. The district court found this to be insufficient.

The district court went on to find that, even if Brannon had included a hostile work environment claim in her amended complaint, her factual allegations were insufficient to survive the motion to dismiss stage. In determining this, the district court interpreted Brannon's argument to be that she properly asserted a claim of a *substantive* hostile work environment, rather than of a *retaliatory* hostile work environment.[1] Under our precedent, the two

---

[1] Some cases instead use the phrase "discriminatory hostile work environment," *see Carney v. City of Dothan*, 158 F. Supp. 3d 1263, 1292 (M.D. Ala.

6                     Opinion of the Court                22-10838

have different standards.[2]  Using the standard for a substantive hostile work environment, the district court concluded that Brannon failed to state a claim because her complaint did "not allege intimidation, ridicule, or insult sufficient to meet [the required] standard" of a substantive hostile work environment.  *See Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808–09 (11th Cir. 2010) (en banc) (discussing the severity or pervasiveness of harassment required to make a claim).

Brannon requested leave to amend her complaint if necessary.  However, she made this request in her response opposing the VA's motion to dismiss.  Because Brannon did not file a separate motion that set forth the substance of her proposed amendment or that included a copy of it—as Eleventh Circuit rules require, *see Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)—the district court denied Brannon's request to further amend.

---

2016), or "hostile work environment," *see Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010), to refer to what we call here a "substantive hostile work environment."  Unless context suggests otherwise (such as when the issue at hand is a "retaliatory hostile work environment"), these phrasings are simply different nomenclatures of the same claim.

[2] *Compare Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (noting the five elements of a *substantive* hostile work environment claim), *with Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 836 (11th Cir. 2021) (noting the showing required for a *retaliatory* hostile work environment claim).

Brannon timely appealed the issue of whether she "asserted actionable harassment and/or hostile work environment claims." Appellant's Br. 1. She withdrew Counts V and VI—her disparate treatment claims. *Id.* at 11.

### III.

We review a district court's grant of a motion to dismiss for failure to state a claim de novo, taking as true the complaint's allegations and making any inferences in favor of the plaintiff. *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022).

### IV.

We start our review by determining what, exactly, is being appealed. Although many issues may be litigated below, we only consider those that are properly brought before this court. Indeed, our caselaw is clear: a party abandons any issue that is not clearly raised on appeal. *See LaCourse v. PAE Worldwide Inc.*, 980 F.3d 1350, 1360 (11th Cir. 2020). Simply noting that an issue exists, or curtly asserting that an element of a claim has been met, without more, is insufficient. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when [she] either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

Here, despite raising the question of whether she properly asserted "harassment and/or hostile work environment claims," Brannon's argument appears to focus solely on the latter—whether

hostile work environment claims were sufficiently raised. Indeed, the argument section of Brannon's brief contains two headings: "A. Motion to Dismiss Standard" and "B. The District Court Wrongfully Determined that Appellant Did Not State a Hostile Work Environment Claim." Appellant's Br. 12, 13. The body of Brannon's argument following "Section B." largely discusses why her amended complaint sufficiently alleged a hostile work environment claim. *Id.* at 10–11, 13–21.

To be sure, Brannon makes a passing reference to other harassment claims in her "Statement of the Issue(s)" (asking whether she asserted actionable harassment claims). *Id.* at 1. She also briefly mentions "the harassment claims" in the body of her argument; however, this reference appears to have been used to argue that the relevant allegations "also would create a hostile work environment." *Id.* at 19.

Our conclusion that Brannon only appealed the issue of whether she asserted a hostile work environment claim is further supported by what she does *not* argue in her initial (and only) brief. Brannon does not protest the determination that the claims for her individual harassment allegations (other than the denial of EEOC committee participation) are time barred. Nor does she clearly protest the determination that the denial of EEOC committee participation is not an adverse employment action. And nor does she protest the determination that she could not amend her complaint.

22-10838               Opinion of the Court                    9

Thus, we conclude that Brannon has only appealed whether she asserted a plausible hostile work environment claim.  All other issues have been abandoned.

However, we have not quite finalized the scope of our review.  Next, we next must determine the *type* of hostile work environment claim for which Brannon argues in her appeal.  As noted above, our Circuit has developed two forms of the claim: substantive and retaliatory.  *See Tonkyro*, 995 F.3d at 835–37.

Although not explicitly stated, Brannon appears to argue that the district court should have construed Counts I–IV as *all* raising hostile work environment claims, despite never using the phrase "hostile work environment" outside of the amended complaint's "Preliminary Statement."  We assume, then, that Brannon believes Count I ("Violation of the Rehabilitation Act-Harassment") and Count III ("Violation of Title VII-Race Harassment") asserted substantive hostile work environment claims, while Count II ("Violation of the Rehabilitation Act-Retaliatory Harassment") and Count IV ("Violation of the Title VII Act-Retaliatory Harassment") asserted retaliatory hostile work environment claims.[3]

---

[3] Our assumption is supported by the content of the Counts themselves.  Although the phrase "hostile work environment" is not used in any of the Counts, Counts I and III include conclusory statements that align with the elements of a substantive hostile work environment claim, and the same is true for Counts II and IV with regard to a retaliatory hostile work environment claim.

Regardless of her beliefs, though, we conclude Brannon only appealed whether she asserted a plausible *substantive* hostile work environment claim.   To start, as mentioned above, the district court applied the elements of a substantive hostile work environment when it assessed the viability of Brannon's amended complaint.  Nowhere in her appellate brief does Brannon argue that the district court should have instead—or in addition—used the standards for a retaliatory hostile work environment.  In fact, the phrase "retaliatory hostile work environment" appears only once in her argument.  However, this usage was not to assert that such an environment existed, but rather to argue that "hostile work environment" claims are sometimes referred to as "harassment" claims. So, in Brannon's view, using the word "harassment" should be sufficient to raise a claim for a hostile work environment.  Appellant's Br. 16–17.  Indeed, the sentence that immediately follows the sole use of the phrase "retaliatory hostile work environment" lays out the elements for a *substantive* claim, and factual allegations are tied to those elements two pages later.  *Id.* at 17, 19.  Beyond this, Brannon's only reference to a retaliatory claim is when she briefly asserts in a single sentence that certain VA actions would dissuade a reasonable employee from engaging in protected activity—an element of the cause of action. *See id.* at 18; *Tonkyro*, 995 F.3d at 836 (noting that retaliatory hostile work environment claims require a showing that the alleged conduct would dissuade reasonable workers from bringing or supporting discrimination charges).

As we stated before, these two cursory and conclusory references are insufficient to maintain a claim on appeal. *See Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1189 (11th Cir. 2019); *Sapuppo*, 739 F.3d at 681. We therefore conclude that any arguments that Counts II and IV raised retaliatory hostile work environment claims have been abandoned, and we therefore affirm the district court on those Counts.

The scope of our review is thus narrowed to a single question: did Brannon raise a plausible substantive hostile work environment claim to support Counts I and III?[4]

## V.

The district court dismissed Brannon's argument that she raised a substantive hostile work environment claim on two bases: 1) the claim was not properly raised in her amended complaint, and 2) the alleged facts did not demonstrate severe or pervasive harassment. Because we agree with the district court on the latter point, we need not address the former.

Hostile work environment claims do not address discrete, unpleasant acts. *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir.

---

[4] We note that Brannon appears to argue that Count I should be construed to raise a hostile work environment claim predicated on violations of the Rehabilitation Act. This court has never considered whether such a claim is cognizable. However, because we find that Brannon did not allege facts sufficient to maintain a substantive hostile work environment claim, we need not resolve that question today.

2008). Rather, the cause of action is meant to remedy "acts 'different in kind' whose 'very nature involves repeated conduct' such as 'discriminatory intimidation, ridicule, and insult.'" *Id.* (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114–16). To support a prima facie case for a substantive hostile work environment, a plaintiff must show that 1) she is part of a protected class; 2) she was subjected to unwelcome harassment; 3) the harassment was race-based; 4) the harassment was so severe or pervasive that it permeated the workplace, altered the terms and conditions of employment, and created a "discriminatorily abusive working environment;" and 5) "the employer is responsible for the environment under a theory of either vicarious or direct liability." *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248–49 (11th Cir. 2014).

Although the district court did not comment on this point, and the VA does not present a clear argument on it either, we first note that it is unclear whether the discrete acts alleged by Brannon can be combined to form a cognizable hostile work environment claim. *See Tillman*, 526 F.3d at 1379 (noting that "discrete acts . . . must be challenged as separate statutory discrimination and retaliation claims"). Brannon's amended complaint highlighted four allegedly discriminatory acts: placement on PIP in December 2015; proposed removal for not meeting the standards of PIP in November 2016; denial of weekend overtime opportunities; and a denial of EEOC committee participation in April 2017. Brannon argues that the conduct is related—that the placement on PIP led to her proposed removal, refusal of overtime opportunities, and denial of

22-10838                Opinion of the Court                13

committee participation. Yet, these types of actions are far from the physical and verbal harassment that typically form the bases of these claims. *See, e.g.*, *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1151 (11th Cir. 2020); *Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276, 1285–87 (11th Cir. 2018); *Wilcox v. Corr. Corp. of Am.*, 892 F.3d 1283, 1285–86 (11th Cir. 2018).[5]

Yet, even if we were to construe Brannon's allegations to be sufficiently related and repeated forms of intimidation, we agree with the district court that such conduct was not severe or pervasive enough to constitute a hostile work environment claim.

The severity or pervasiveness requirement contains both an objective and subjective component—that is, the plaintiff must show that she personally perceived the environment to be abusive,

---

[5] *But see Bryant v. Jones*, 575 F.3d 1281, 1296–98 (11th Cir. 2009) (finding severe or pervasive harassment sufficient to alter the terms of employment when a manager "boldly implemented a plan to create a 'darker administration' by refusing to hire whites for open managerial positions, demoting or transferring already employed white managers, and filling the positions they had been occupying with blacks."). *Bryant*, however, is distinguishable from Brannon's case. While Brannon alleges four instances of discrimination, the most pervasive perhaps being placement on a monitoring program and denials of overtime, the plaintiffs in *Bryant* demonstrated that their employer engaged in a determined campaign to undermine their jobs. *See id.* Indeed, the plaintiffs in *Bryant* alleged several angry confrontations, one physically threatening interaction, the stripping of professional responsibilities, demotions, exclusions from meetings, and denials of resources. *See id.* Brannon's claims of harassment, taken as true, come nowhere close to this level of severity or pervasiveness.

and that a reasonable person would share that perception. *Fernandez*, 961 F.3d at 1153. We use a number of factors to assess the objective portion of our inquiry, including 1) "the frequency of the conduct;" 2) "the severity of the conduct;" 3) the degree to which the conduct was "physically threatening or humiliating" as opposed to petty behavior or offensive utterances; and 4) "whether the conduct unreasonably interfere[d] with the employee's job performance." *Id.*

Considering the first factor, the amended complaint does not show that the VA's alleged conduct was frequent. The VA placed Brannon on PIP in December 2015. Eleven months later came the proposed removal for not meeting PIP's standards. Still five months after that came the denial of committee participation. And while Brannon stated that the VA precluded her from weekend overtime opportunities, these overtime shifts were scheduled once every three to six months.[6] Further, beyond claiming that a third party overheard a conversation about removing Brannon,[7] Brannon does not allege any direct verbal or physical abuse to fill the interstices between the alleged instances of harassment. We do

---

[6] The EEOC found that these denials were connected to documented performance issues, rather than isolated occurrences without justification. While Brannon claims that there were no performance issues, she does not dispute the VA's alleged reason for denying her the overtime shifts.

[7] Brannon alleged that a third party overheard another person tell Brannon's supervisor, "You've got to come up with something better than this if you want to get rid of her." Appellant's Compl. ¶ 74.

not believe these sporadic, generally administrative actions support a claim of a substantive hostile work environment. *See, e.g., Adams*, 754 F.3d at 1250–57 (comparing claims where disturbingly racist conduct was directly experienced on multiple occasions by the plaintiffs, with inadequate claims where the conduct was infrequent, indirect, and not particularly humiliating).

Looking to the second factor, we agree with the district court that the conduct was not exceptionally severe. To be sure, placement on a monitoring program that carries the potential for removal, and proposed removals themselves, are understandably daunting experiences. Further, denial of overtime and committee opportunities may indeed be frustrating. However, the first two acts appear to be rather standard employment practices that could be expected in any workplace, and the latter two do not, in our view, combine to make the conduct unacceptably severe. *Cf. Bryant*, 575 F.3d at 1296–98.

The third factor draws out the peculiarity of Brannon's complaint and also fails to provide support for a substantive hostile work environment claim. Brannon does not allege that individuals bombarded her with verbal insults or physical abuse in the workplace. Nor does she allege that the VA engaged in a series of actions to undermine her ability to do her job. Rather, she alleges that the VA subjected her to a handful of employment actions. While placement on an improvement plan or the denial of certain work opportunities may be uncomfortable for many, we do not

believe—even considered cumulatively—that the alleged conduct *in this case* was overtly humiliating or threatening.

Finally, evidence regarding the fourth factor undermines Brannon's claim of severe or pervasive harassment. Brannon did not claim that the VA's conduct unreasonably interfered with her job performance. Quite the contrary. Rather, Brannon maintained in her amended complaint that the VA improperly based its proposal to remove her for failing to maintain the standards of PIP on "unsupportable data" that created a "false narrative," and that she "never failed to maintain the standards of PIP." Appellant's Compl. ¶ 88, 93.

For all these reasons, we agree with the district court that Brannon's complaint did not sufficiently allege facts to plausibly constitute a substantive hostile work environment claim. We therefore affirm the district court on Counts I and III.

## VI.

We do not mean to minimize what Brannon alleged to have experienced at her workplace. However, in order to maintain an issue on appeal, a party must raise that issue in its initial appellate brief. And, in order to make a substantive hostile work environment claim, a party must allege repeated instances of intimidation, insult, or ridicule that together amount to particularly severe or pervasive harassment. Here, neither happened. Therefore, we affirm the district court and conclude that Brannon did not raise a

22-10838                Opinion of the Court                17

substantive hostile work environment claim, and we find Brannon's other claims have been abandoned.

AFFIRMED.